

1  Juanita R. Brooks (SBN 75934)
   brooks@fr.com
2  Roger A. Denning (SBN 228998)
   denning@fr.com
3  Olga I. May (SBN 232012)
   omay@fr.com
4  FISH & RICHARDSON P.C.
   12390 El Camino Real
5  San Diego, CA 92130-2081
   Telephone: (858) 678-5070
6  Facsimile: (858) 678-5099

7  Tamara Fraizer (SBN 215942)
   Fraizer@fr.com
8  FISH & RICHARDSON P.C.
   500 Arguello Street
9  Suite 500
   Redwood City, CA 94063
10  Telephone: (650) 839-5070
   Facsimile: (650) 839-5071

11

12  Attorneys for Defendants FRESENIUS USA, INC., FRESENIUS USA
    MANUFACTURING, INC., FRESENIUS MEDICAL CARE HOLDINGS, INC.,
13  FRESENIUS MEDICAL CARE NORTH AMERICA, INC., FRESENIUS USA
    MARKETING, INC., and BEN LIPPS

14

15             UNITED STATES DISTRICT COURT

16     CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

17  GEORGE KAPULE ENTENDENCIA,  Case No. **CV14-01028-MWF(SSx)**

18  WILLIAM SYLVA, and MARC SYLVA,
    as surviving statutory beneficiaries for the
19  wrongful death of VIOLET GERTRUDE   **DECLARATION OF TAMARA**
    ENTENDENCIA, deceased, individually  **FRAIZER IN SUPPORT OF**
20  and on behalf of all other heirs of    **NOTICE OF REMOVAL UNDER 28**
    decedent; DAVID MCINTYRE, as    **U.S.C. § 1441(b) (DIVERSITY**
21  surviving statutory beneficiary for the  **JURISDICTION)**
    wrongful death of ELIZABETH
22  MCINTYRE, deceased, individually and
    on behalf of all other heirs of decedent,
23

24                Plaintiffs,

25

26  v.

27  FRESENIUS USA, INC., FRESENIUS
    USA MANUFACTURING, INC.,
28

COPY

FILED
CLERK, U.S. DISTRICT COURT

FEB 1 0 2014

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

1  FRESENIUS MEDICAL CARE
   HOLDINGS, INC., FRESENIUS
2  MEDICAL CARE NORTH AMERICA,
   INC., FRESENIUS USA MARKETING,
3  INC., WALTER L. WEISMAN, BEN
   LIPPS, JOHN DOES, MEDICAL
4  DIRECTORS, and DOES 1-100
   INCLUSIVE
5
6
                        Defendants.
7

8        I, Tamara Fraizer, declare as follows:

9        1.      I am an attorney at law licensed to practice in all the Courts of the State

10  of California and admitted to practice in the Superior Court of California.  I am a

11  principal in the law firm of Fish & Richardson P.C., counsel of record for

12  Defendants Fresenius USA, Inc., Fresenius USA Manufacturing, Inc., Fresenius

13  Medical Care Holdings, Inc., and Fresenius USA Marketing, Inc. (collectively "the

14  Fresenius Defendants")[1], and Ben Lipps.  If called to testify to the following, I could

15  do so truthfully, competently and of my own personal knowledge.

16        2.      Attached as Exhibit A is a true and correct copy of all process,

17  pleadings and orders, including the summons and Complaint, served on the

18  Fresenius Defendants in *Entendencia, et al. v. Fresenius, et al.*, Case No.

19  BC532644, Superior Court of California for the County of Los Angeles.

20        3.      Attached as Exhibit B is a true and correct copy of the Declaration of

21  Walter L. Weisman filed in *Nunez v. Fresenius USA, Inc. et al.*, Case No. 2:13-cv-

22  02729-JGP-OP, Doc. No. 25-1 (C.D. Cal. June 17, 2013).

23

24

25

26        [1]  "Fresenius Medical Care North America, Inc." is also named as a defendant.
   "Fresenius Medical Care North America, Inc." is not a legal entity, but instead is a
27  d/b/a for Fresenius Medical Care Holdings, Inc.  Moreover, Fresenius USA Sales,
   Inc., named in the body of the Complaint but not the caption, was dissolved in March
28  2010.

1        4.     Attached as Exhibit C is a true and correct copy of the Notice of Filing

2 of Notice of Removal that the Fresenius Defendants and Mr. Lipps intend to file

3 today in the Superior Court of California for the County of Los Angeles.

4        5.     Attached as Exhibit D is a true and correct copy of the Declaration of

5 Ben J. Lipps filed in *Johnson et al. v. Fresenius USA, Inc. et al.*, Case No. 2:13-cv-

6 06245-RGK-VBK (C.D. Cal. Aug. 26, 2013).

7        6.     Attached as Exhibit E is a true and correct copy of the Order

8 Dismissing all Plaintiffs Except for the First Named Plaintiff for Improper Joinder

9 in *Flauta et al., v. Johnson & Johnson et al.*, Case No. 12-cv-09095 (C.D. Cal. Jan

10 10, 2013).

11        I declare under penalty of perjury under the laws of the State of California

12 that the foregoing is true and correct.

13

14        Executed on February 10, 2014, in Redwood City, California.

15

16                    */s/ Tamara Fraizer*

17                    Tamara Fraizer (SBN 215942)

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

I am employed in the County of San Mateo.  My business address is Fish & Richardson P.C., 500 Arguello Street, Suite 500, Redwood City, California 94063.  I am over the age of 18 and not a party to the foregoing action.

I am readily familiar with the business practice at my place of business for collection and processing of correspondence for personal delivery, for mailing with United States Postal Service, for facsimile, and for overnight delivery by Federal Express, Express Mail, or other overnight service.

On February 10, 2014, I served a copy of the foregoing document(s) on the interested parties in this action by placing a true and correct copy thereof, enclosed in a sealed envelope, and addressed as follows:

**Counsel for Plaintiff:**

Lowell W. Finson (CA Bar No 275586)
PHILLIPS LAW FIRM
2101 Rosecrans Avenue, Suite 3290
EI Segundo, CA 90245
Tel: (877)480-9142
Fax: (213)330-0346
lowell@justiceforyou.com

J. Paul Sizemore, (CA Bar No 254981)
Jaime E. Moss, (CA Bar No 285761)
SIZEMORE LAW FIRM, PLC.
2101 Rosecrans Avenue, Suite 3290
EI Segundo, CA 90245
Tel: (310) 322-8800
Fax: (310) 322-8811
paul@sizemorelawfirm.com
moss@sizemorelawfirm.com

Scott M. Hendler (TX Bar No 09445500)
Sean Lyons (TX Bar No 00792280)
HENDLER LAW, PC
Park Terrace
1301 W. 25th Street, Suite 400
Austin, TX 78705
Telephone: (512) 439-3200
shendler@hendlerlaw.com
slyons@henderlaw.com

Michael J. Brickman (SC Bar No 000874)
Kimberly Keevers Palmer (SC Bar No 66496)
Nina Fields Britt (SC Bar No 68294)
RICHARDSON, PATRICK, WESTBROOK & BRICKMAN, LLC
1017 Chuck Dawley Boulevard
Post Office Box 1007
Mt. Pleasant, SC 29464
Telephone: (843) 727-6500
mbricman@rpwb.com
kkeevers@rpwb.com
nfields@rpwb.com

☐ **MAIL:**   Such correspondence was deposited, postage fully paid, with the United States Postal Service on the same day in the ordinary course of business.

4

| | | |
|---|---|---|
| ☐ | **PERSONAL:** | Such envelope was delivered by hand to the offices of the addressee. |
| ☐ | **FACSIMILE:** | Such document was faxed to the facsimile transmission machine with the facsimile machine number stated above. Upon completion of the transmission, the transmitting machine issued a transmission report showing the transmission was complete and without error. |
| ☐ | **E-MAIL:** | Such document was transmitted by electronic mail to the addressees' email addresses as stated above. |
| ☒ XX | **FEDERAL EXPRESS:** | Such correspondence was deposited on the same day in the ordinary course of business with a facility regularly maintained by Federal Express. |
| ☐ | **EXPRESS MAIL:** | Such correspondence was deposited on the same day in the ordinary course of business with a facility regularly maintained by the United States Postal Service. |
| ☐ | **OVERNIGHT DELIVERY:** | Such correspondence was given on the same day in the ordinary course of business to an authorized courier or a driver authorized by that courier to receive documents. |

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

I declare under penalty of perjury that the above is true and correct.  Executed on February 10, 2014, at Redwood City, California.

*/s/ Cecilia Acosta* _____
Cecilia Acosta

# EXHIBIT A

1  Lowell W. Finson, CA Bar #275586
   **PHILLIPS LAW FIRM**
2  2101 Rosecrans Avenue, Suite 3290
   El Segundo, CA 90245
3  Tel: (877)480-9142 / Fax: (213)330-0346
   lowell@justiceforyou.com
4
   J. Paul Sizemore, CA Bar #254981
5  Jaime E. Moss, CA Bar #285761
   **SIZEMORE LAW FIRM, PLC.**
6  2101 Rosecrans Avenue, Suite 3290
   El Segundo, CA 90245
7  Tel:(310) 322-8800 / Fax: (310) 322-8811
   paul@sizemorelawfirm.com
8  moss@sizemorelawfirm.com
9
10 Scott M. Hendler (TX Bar # 09445500) (*pro
   hac* to be filed)
11 Sean Lyons (TX Bar # 00792280) (*pro hac*
   to be filed)
   **HENDLER LAW, PC**
12 Park Terrace
   1301 W. 25th Street, Suite 400
13 Austin, TX 78705
   Telephone:  (512) 439-3200
14 shendler@hendlerlaw.com
   slyons@hendlerlaw.com
15
16
17
   *Attorneys for Plaintiffs*
18

   Michael J. Brickman (SC Bar # 000874)
   (*pro hac* to be filed)
   Kimberly Keevers Palmer (SC Bar # 66496)
   (*pro hac* to be filed)
   Nina Fields Britt (SC Bar # 68294) (*pro hac*
   to be filed)
   **RICHARDSON, PATRICK,
   WESTBROOK & BRICKMAN, LLC**
   1017 Chuck Dawley Boulevard
   Post Office Box 1007
   Mt. Pleasant, South Carolina 29464
   Telephone:  (843) 727-6500
   mbrickman@rpwb.com
   kkeevers@rpwb.com
   nfields@rpwb.com

**FILED**
Superior Court of California
County of Los Angeles

JAN 09 2014

Sherri R. Carter, Executive Officer/Clerk
By _____
   Shaunya Bolden      Deputy

**BY FAX**

19
20        **THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
              COUNTY OF LOS ANGELES**

| | |
|---|---|
| 21  GEORGE KAPULE ENTENDENCIA, WILLIAM SYLVA, and MARC SYLVA, as | CASE NO:  **B C 5 3 2 6 4 4** |
| 22  surviving statutory beneficiaries for the wrongful death of VIOLET GERTRUDE | |
| 23  ENTENDENCIA, deceased, individually and | **COMPLAINT FOR DAMAGES** |
| 24  on behalf of all other heirs of decedent ; DAVID MCINTYRE, as surviving statutory | 1) STRICT PRODUCTS LIABILITY |
| 25  beneficiary for the wrongful death of ELIZABETH MCINTYRE, deceased, | 2) NEGLIGENCE |
| 26  individually and on behalf of all other heirs of decedent, | 3) FAILURE TO WARN |
|     | 4) BREACH OF WARRANTY OF MERCHANTABILITY |
| 27  | 5) BREACH OF EXPRESS WARRANTY, |

1
COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

|  |  |
|---|---|
| 1 |  |
| 2 | Plaintiffs, |
| 3 | vs. |
| 4 | FRESENIUS USA, INC., FRESENIUS USA MANUFACTURING, INC., FRESENIUS |
| 5 | MEDICAL CARE HOLDINGS, INC., FRESENIUS MEDICAL CARE NORTH. |
| 6 | AMERICA, INC., FRESENIUS USA MARKETING, INC., WALTER L. |
| 7 | WEISMAN, BEN LIPPS, JOHN DOES, MEDICAL DIRECTORS, and DOES 1-100 |
| 8 | INCLUSIVE |
| 9 | Defendants. |

6) BREACH OF IMPLIED WARRANTY
7) FRAUD
8) UNJUST ENRICHMENT
9) WRONGFUL DEATH
10) SURVIVORSHIP ACTION
11) LOSS OF CONSORTIUM

DEMAND FOR JURY TRIAL

Complaint Filed: _____, ____

Plaintiffs, by and through the undersigned counsel, hereby bring this Complaint for damages against the Defendants, and allege the following:

**INTRODUCTION**

1.     This is an action for damages relating to the Defendants' design, manufacture, research, sale, testing, marketing, advertising, promotion, and/or distribution of GranuFlo® Dry Acid Concentrate (hereinafter "GranuFlo®") and NaturaLyte® Liquid Acid Concentrate (hereinafter "NaturaLyte®") for use as acid concentrates during hemodialysis.

2.     The use of GranuFlo® and NaturaLyte® can cause an increased risk of death and serious injuries, including sudden cardiac death, cardiopulmonary arrest, heart attack, heart failure, cardiac arrhythmias, and stroke.  Despite knowing these risks, Defendants hid them from their customers, the FDA, health care providers and the public, and continued to manufacture, sale, promote, use and distribute GranuFlo® and NaturaLyte® for use in dialysis patients across the country.

3.     Plaintiffs bring these claims, individually, for personal injuries and death caused by GranuFlo® and/or NaturaLyte®.

2

## PARTIES

4.    At all times relevant to this action, Decedent, VIOLET GERTRUDE ENTENDENCIA (hereinafter also referred to as "Decedent"), was an adult resident citizen of California.

5.    At all times relevant to this action, Plaintiff, GEORGE KAPULE ENTENDENCIA, was the surviving husband of decedent, VIOLET GERTRUDE ENTENDENCIA, and also resided in California.

6.    At all times relevant to this action, Plaintiffs, WILLIAM SYLVA and MARC SYLVA, are and were the surviving children of VIOLET GERTRUDE ENTENDENCIA and resided in Hawaii and California, respectively.

7.  Said Plaintiffs are the heirs and co-successors in interest to decedent VIOLET GERTRUDE ENTENDENCIA and are entitled to bring this claim for all injuries and damages, including exemplary and punitive damages, against Defendants. A true and correct copy of the decedent's death certificate is attached as Exhibit "1". True and correct copies of the successors-in-interest declarations are attached as Exhibit "2".

8.    At all times relevant to this action, Decedent ELIZABETH MCINTYRE (hereinafter also referred to as "Decedent") was an adult resident citizen of Nevada.

9.    At all times relevant to this action, Plaintiff, DAVID MCINTYRE, was the surviving husband of decedent, ELIZABETH MCINTYRE and also resided in Nevada.

10. Said plaintiff is an heir and successor in interest to decedent ELIZABETH MCINTYRE and is entitled to bring this claim for all injuries and damages, including exemplary and punitive damages, against Defendants. A true and correct copy of the decedent's death certificate is attached as Exhibit "3". A true and correct copy of the successor-in-interest declaration is attached as Exhibit "4".

3

11.      Defendant, Fresenius Medical Care Holdings, Inc. d/b/a Fresenius Medical Care North America ("hereinafter also referred to as FMCNA") is a corporation organized and existing under the laws of New York with its principal place of business in Lexington, Massachusetts. FMCNA is the country's largest full-service provider of dialysis care. FMCNA, through various affiliates, provides treatment for approximately 168,000 patients in its approximately 2,104 U.S. dialysis clinics, some of which are located in this district. At all times relevant hereto, the Defendant, FMCNA, regularly and continuously did business within this judicial district including, designing, testing, manufacturing, researching, marketing, advertising, promoting, selling, and/or distributing GranuFlo® and/or NaturaLyte®.

12.      Defendant, Fresenius Medical Care North America, Inc. (hereinafter also referred to as "FMCNA") is a corporation organized and existing under the laws of the state of Massachusetts with its principal place of business at 920 Winter Street, Waltham, Massachusetts 02451. At all relevant times herein, FMCNA regularly and continuously did business within this judicial district including, designing, researching, testing, manufacturing, marketing, advertising, promoting, selling, and/or distributing GranuFlo® and/or NaturaLyte®.

13.      Defendant Fresenius USA, Inc. (hereinafter also referred to as "FUSA") is, and at all times herein mentioned was, a corporation organized and existing under the laws of Massachusetts with its principal place of business and primary manufacturing facility located at 2637 Shadelands Drive, Walnut Creek, California, 94598. FUSA's principal place of business has been in Walnut Creek, California since 1987. At all times herein mentioned, FUSA regularly and continuously did business throughout California, including this judicial district, and was in the business of designing, testing, manufacturing, marketing, advertising, promoting, selling, warranting, shipping and/or distributing GranuFlo® and/or NaturaLyte®, along with the machines and products necessary to utilize GranuFlo®

4

and/or NaturaLyte® during dialysis. All North American sales, shipment, returns, and warranty of Fresenius's products, including GranuFlo® and/or NaturaLyte®, are placed with, processed and shipped from Fresenius USA, Inc. located at 2637 Shadelands Drive, Walnut Creek, California, 94598. Fresenius USA, Inc. has transacted and conducted business in, and has derived substantial revenue from GranuFlo® and NaturaLyte® and expected or should have expected its acts to have consequences within the State of California and the County of Los Angeles. Fresenius USA, Inc. is a wholly owned subsidiary of Defendant Fresenius Medical Care Holdings, Inc. d/b/a Fresenius Medical Care North America.

14. Defendant Fresenius USA Manufacturing, Inc. (hereinafter also referred to as "Fresenius Manufacturing") is a corporation of the state of Delaware with its principal place of business at 920 Winter Street, Waltham, Massachusetts 02451. At all relevant times herein, Fresenius Manufacturing was in the business of promoting, researching, manufacturing, labeling, and distributing NaturaLyte® Liquid and Granuflo® Dry Acid Concentrates. Defendant does business throughout the United States and in the State of California, regularly and continuously did business within this judicial district including, designing, testing, researching, manufacturing, marketing, advertising, promoting, selling, and/or distributing GranuFlo® and/or NaturaLyte®.

15. Defendant Fresenius USA Marketing, Inc. (hereinafter also referred to as "Fresenius Marketing") is a corporation organized under the laws of the State of Delaware having its headquarters and principal place of business at 920 Winter Street, Waltham, Massachusetts, 02451. Defendant, Fresenius USA Marketing, Inc. is a foreign corporation authorized to transact business in Plaintiffs State of residence. At all times relevant hereto, Fresenius Marketing regularly and continuously did business regularly within and continuously did business within this judicial district including, designing, testing,

manufacturing, marketing, advertising, promoting, selling, and/or distributing GranuFlo® and/or NaturaLyte®.

16. Defendant Fresenius USA Sales, Inc. (hereinafter also referred to as "FUSA") is a corporation organized under the laws of the State of Massachusetts having its headquarters and principal place of business at 920 Winter Street, Waltham, Massachusetts, 02451. Fresenius USA Sales, Inc. is authorized to transact business in Plaintiffs State of residence. At all relevant times hereto, Fresenius Sales regularly and continuously did business regularly within and continuously did business within this judicial district including designing, researching, testing, manufacturing, marketing, advertising, promoting, selling and/or distributing Granuflo® and/or NaturaLyte®.

17. Walter L. Weisman (hereinafter also referred to as "Weisman" "Mr. Weisman" or "Defendant Weisman") is, and at all times herein mentioned was, a resident of the County of Los Angeles, State of California. Mr. Weisman is, and at all times pertinent was, a member of the Supervisory Board for Fresenius Medical Care in Los Angeles, California and has held that position since 1996. Mr. Weisman is also a Member of the Supervisory Board at Management AG - General Partner of Fresenius Medical Care, is the Chairman of the Audit and Corporate Governance Committee of Fresenius Medical Care, a member of the Joint Committee of Fresenius Medical Care and a member of the Nomination Committee of Fresenius Medical Care. At all times, the Supervisory Board, Audit and Governance Committee and Joint Committee, which Mr. Weisman was a member of, managed, supervised and controlled all the North American Fresenius business entities.

18. At all times pertinent, Mr. Weisman, had oversight, management and knowledge of the defective nature of GranuFlo® and NaturaLyte®, but deliberately and/or negligently failed to advise the public, health care providers, including Plaintiffs and Plaintiffs' treating physicians, of these defects, despite having the duty to do so, as well as having the ability to

6

effectuate the decision to implement GranuFlo and Naturalyte without providing the appropriate warnings. Mr. Weisman knowingly and intentionally suppressed material facts and deliberately obfuscated the instructions and warnings of GranuFlo® and NaturaLyte® for the purpose, in part, of increasing sales and profits.

19.     Defendant Weisman's salary, bonuses, and benefits as an officer, director and committee member of Fresenius Medical Care are commensurate with the sales and profitability of Fresenius, including the sales and profits from GranuFlo® and NaturaLyte®, and as a member of Fresenius's Board. Defendant Weisman holds and has been granted significant stock positions and options in Fresenius, based on its profitability, including the sales and profits of GranuFlo® and NaturaLyte®.  Defendant Weisman held the same corporate governance positions during the time Defendants were operating under a Corporate Integrity Agreement, which related to the management of Fresenius Clinics.

20.     Dr. Ben Lipps (hereinafter also referred to as "Lipps" "Dr. Lipps" or "Defendant Lipps") is, and at all times herein mentioned, a resident of Orange County, in the State of California. Dr. Lipps served as the chief executive officer of Fresenius Medical Care and as chairman of its management board from 1999 through 2012.  He served as the chief executive officer of FMCNA from 1996 through 1999 and was chairman of FMCNA's board through 2012.  Dr. Lipps was the chief executive officer of FUSA from 1985 through 1996.  He is now a consultant to Fresenius Medical Care and honorary chairman of the supervisory boards of Fresenius Medical Care.

21.     At all times herein mentioned, Dr. Lipp's salary, bonuses, and benefits as an officer, director, and committee member of Fresenius Medical Care, FMNCA and FUSA were commensurate with the profitability of Fresenius, including the sales and profits from GranuFlo® and NaturaLyte®.  As a member of Fresenius's Board, Dr. Lipps holds and has been

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

1 | granted significant stock positions and options in Fresenius based on its profitability, including

2 | the sales and profits of GranuFlo® and NaturaLyte®.

3 |     22.    At all times herein mentioned, Dr. Lipps knew and was kept directly apprised of

4 | the increased risk of cardiac death and other problems with GranuFlo® and NaturaLyte®

5 | through personal involvement, direct reporting, internal meetings, internal studies, internal

6 | memorandums, reports of the bicarbonate committee, research projects, risk and trend reports

7 | and research project outcomes. At all times set forth herein, as chief executive officer and

8 | chairman of Fresenius Medical Care, FMCNA and FUSA, Dr. Lipps, had oversight, management

9 | and actual knowledge of the defective nature of GranuFlo® and NaturaLyte®, but deliberately

10 | and/or negligently failed to advise the public, health care providers, including Plaintiffs and

11 | Plaintiffs' treating physicians, of these defects, despite having the duty to do so, as well as

12 | having the ability to effectuate the decision to implement GranuFlo® and NaturaLyte® without

13 |

14 | providing the appropriate warnings.

15 |     23.    John Does, Medical Director(s) (hereinafter also referred to as "John Doe" and/or

16 | "Medical Director"), was at all times pertinent, the Medical Director of the Fresenius Medical

17 | Clinic located in California, and at all times pertinent, was an agent of one or more of the named

18 | Fresenius Defendants, but was not acting within the scope of her employment and/or agency,

19 | with any entity unnamed in this Complaint, and had knowledge of the defective nature of

20 | GranuFlo® and NaturaLyte®, but deliberately and/or negligently failed to implement any

21 | safeguards and/or protocols, which would have avoided the injuries and/or death of Decedent,

22 | and/or her healthcare providers, despite having the duty to do so. Defendant is and at all time

23 | herein mentioned was, a resident of the State of California. Upon information and belief, "John

24 | Doe and/or Medical Director" took no part in the specific dialysis treatment rendered to

25 |

26 |

27 | <center>8</center>

28 |

1   Decedent, and any and all allegations that apply to her, do not implicate any claims of medical

2   malpractice

3       24.     Plaintiffs do not know the true names and capacities of DOES 1-100 inclusive.

4   Plaintiffs will seek leave to amend when the true names and identities of said fictitiously named

5   defendants are ascertained. At all relevant times herein DOES 1-100 inclusive were the

6   individual, corporations, and/or business entities, which were agents, servants, joint ventures,

7   partners, co-conspirators, participants or otherwise ratified the conduct of the other Defendants

8   as alleged herein.

9       25.     Hereinafter the aforementioned Defendants, including Defendants Weisman and

10  Lipps, may collectively be referred to as "Defendants" or "Fresenius" or "Fresenius Medical

11  Care."

12

13      26.     At all relevant times each Defendant acted in all aspects as agent and alter ego

14  of for each corporate entity.  The terms "Defendants" and "Fresenius" shall, unless otherwise

15  specified, refer to all defendants, acting individually, and/or in concert with each other.

16      27.     At all relevant times, the Defendants, and each of them, were engaged in the

17  business of designing, researching, testing, manufacturing, marketing, promoting, selling,

18  labeling, packaging, and distributing GranuFlo® and NaturaLyte® in the County of Los

19  Angeles, State of California, and throughout the United States and at all times herein had the

20  duty to protect Decedent from the health and safety hazards of GranuFlo® and NaturaLyte®,

21  including the increased risk of sudden cardiac death.

22                      **JURISDICTION & VENUE**

23      28.     The California Superior Court has jurisdiction over all Defendants because based

24  on the information and belief, each is a corporation, and/or entity, and/or person organized under

25  the laws of the State of California, a foreign corporation or association authorized to do business

26

27                                  9

28

1   in California and registered with the California Secretary of State, or that has sufficient minimum

2   contacts in California, is a citizen of California, or otherwise intentionally avails itself of the

3   California market so as to render the exercise of jurisdiction over it by the California courts

4   consistent with traditional notions of fair play and substantial justice.

**a. Defendant FUSA is indisputably a California citizen**

5

6   29.     Defendant FUSA has repeatedly alleged and explicitly stated that its principal

7   place of business is, in fact, in Walnut Creek, California.

8   30.     FUSA has filed complaints in District Courts of California, asserting they are a

9   California citizen. Attached as **Exhibit "A"** is a Complaint for Declaratory Judgment of Patent

10  Invalidity and Noninfringement filed on April 4, 2003 in *Fresenius USA, Inc., et al. v. Baxter*

11  *International Inc., et. al.*, Case No. 4:03-cv-012431 (Northern District of California).

12

13  31.     FUSA has filed answers to complaints in various district courts admitting that its

14  principal place of business is in Walnut Creek, California. Attached as **Exhibit "B"** is an

15  Answer to Plaintiffs' Complaint filed by Fresenius USA, Inc. on September 20, 2012 in *Baxter*

16  *International, Inc., et al. v. Fresenius Medical Care Holdings, Inc., et. al.*, Case No. 1:12-cv-

17  06890 (Northern Dist. of Illinois).

18  32.     FUSA has repeatedly stated that its principal place of business is in Walnut Creek

19  and further that numerous employees of importance are located in California. Attached as

20  **Exhibit "C"** is an Opinion issued by Judge John Ward granting FUSA's Motion to Transfer the

21  case to the Northern District of California on February 6, 2007 in *Baxter Healthcare Corp., et.al.*

22  *v. Fresenius Medical Care Holdings, Inc., et al.*, Case No. 2:06-cv-438 (Eastern Dist. of Texas).[1]

23  33.     FUSA has affirmatively admitted that its principal place of business is in Walnut

24  Creek, California and has offered evidence supporting such admission into evidence. Attached as

25

26

27  _____

[1] Defendant FUSA's motion was filed under seal.

28

1   **Exhibit "D"** is a Joint Pretrial Statement filed on January 29, 2010 in *Baxter Healthcare Corp,*

2   *et al. v. Fresenius Medical Care Holdings, Inc., et. al.*, Case No. 4:07-cv-01359 (Northern Dist.

3   of California).

4       34.     Further, the Federal Trade Commission has identified the principal place of

5   business of FUSA as Walnut Creek, California. Attached as **Exhibit "E"** is a Complaint by the

6   Federal Trade Commission in *Fresenius AG v. Fresenius USA, Inc.*, Docket No. C-3689.

7       35.     Clearly, from at least 2003 through 2012, FUSA has unequivocally affirmed that

8   its principal place of business is indeed located in Walnut Creek, California.

9       **b. Additionally, Defendants, Mr. Weisman and Dr. Lipps Are Each California**

10  **Citizens.**

11      36.     Plaintiff, Defendant Mr. Weisman, Defendant Dr. Lipps, and Defendant FUSA

12  are each citizens of California.

13      37.     Further, all Defendants have purposefully availed themselves of the benefits and

14  the protections of the laws within the State of California. Defendants, Mr. Weisman and Dr.

15  Lipps reside in and are citizens of the State of California. Defendant FUSA has its principle

16  place of business in California and conducts substantial business in California. Collectively,

17  Defendants have had sufficient contact such that the exercise of jurisdiction would be consistent

18  with the traditional notions of fair play and substantial justice.

19      38.     Venue is proper in this court pursuant to California Code of Civil Procedure § 395

20  in that Defendant FUSA resides and maintains its principal place of business in the State of

21  California, and Defendants Mr. Weisman and Dr. Lipps each are citizens of the State of

22  California.

23      39.     This Court has personal jurisdiction over the Defendants.  Defendants are and

24  were at all relevant times residents of, and/or authorized to conduct business in this state and

25

26

27  <div align="center">11</div>

Defendants conducted such business within the state including the performance of acts that caused or contributed to the harm, giving rise to this action.

40.    At all times material hereto, the Defendants maintain systematic and continuous contacts in this judicial district, regularly transact business within this judicial district, employ numerous individuals in this district and regularly avail themselves of the benefits of this judicial district.  Defendants received substantial financial benefit and profits as a result of designing, researching, manufacturing, marketing, advertising, promoting, selling and/or distributing GranuFlo® and NaturaLyte® in this district and throughout the United States.

41.    The combined acts and/or omissions of each Defendant resulted in indivisible injury to Plaintiff.  Each of the above-named Defendants is a joint tortfeasor and/or co-conspirator and is jointly and severally liable to Plaintiff for the negligent acts and omissions alleged herein.  Each of the above-named Defendants directed, authorized or ratified the conduct of each and every other Defendant, including each Defendant's officers, directors, managing agents, parent and subsidiary corporations and clinics.

42.    The amount in controversy exceeds the jurisdictional limits of this court.

## FACTUAL ALLEGATIONS

43.    At all relevant times, the Defendants, intentionally, recklessly and/or negligently hid, concealed, suppressed, omitted, and misrepresented the risks, dangers, defects, and/or disadvantages of GranuFlo® and NaturaLyte®.  This action results from the injuries, damages and death caused by the use of and/or Granuflo® and/or NaturaLyte® in the dialysis treatment provided to Plaintiffs.

12

A.      **Hemodialysis Treatment**

44.      People experiencing end stage kidney failure undergo dialysis, which attempts to mimic the functions of healthy kidneys by removing toxins and excess fluids from the blood. A person undergoing hemodialysis, a particular type of dialysis, is connected to a machine that removes blood from the person's body, runs it across a membrane, and returns it to the body. As the blood runs across the membrane, a fluid on the other side, called dialysate which consists of purified water, an acid concentrate and bicarbonate concentrate, draws out and carries away toxins and excess fluids and supplements the blood with necessary electrolytes, such as sodium, potassium, calcium and magnesium.

45.      One goal of dialysis is to restore the pH balance within a patient's blood. The body naturally produces acid which normally functioning kidneys neutralize to prevent metabolic acidosis, a condition in which the blood contains too much acid. Most hemodialysis treatments accomplish this by including bicarbonate concentrate, a base, in the dialysate to buffer the acid in the patient's blood.

46.      Patients are prescribed a specific amount of bicarbonate by their physicians to be delivered during the dialysis process. If a patient undergoing dialysis receives an excess of bicarbonate, metabolic alkalosis can occur. Metabolic alkalosis is a medical condition in which there is too much bicarbonate or base in the blood. If left untreated, metabolic alkalosis can lead to serious adverse health consequences, including electrolyte imbalances, hypokalemia, hypercapnia, hypotension, hypoxemia, heart arrhythmias, heart attacks, coma, cardiopulmonary arrest, stroke, and death.

B.     Fresenius - GranuFlo® and NaturaLyte®

47.     Fresenius is a publicly traded company with net revenue of $12.7 billion dollars worldwide in 2011 and $12.053 billion dollars in 2010 with $8.13 billion dollars attributed to its North America operations.

48.     Fresenius is the world's largest integrated provider of products and services for individuals undergoing dialysis. "Through its network of 3,123 dialysis clinics in North America, Europe, Latin America, Asia-Pacific and Africa, Fresenius Medical Care provides dialysis treatment to 256,456 patients around the globe.  Fresenius Medical Care is also the world's leading provider of dialysis products such as hemodialysis machines, dialyzers and related disposable products."  Fresenius Medical Care and its North American operations are controlled, supervised and managed by Fresenius's Supervisory Board and Corporate Governance Committees of which Defendant Weisman and Defendant Lipps are members.

49.     The number of clinics is comprised of 2,104 clinics in North America and 1,108 clinics in the International segment. As of June 30, 2013, Fresenius Medical Care in North America provided dialysis treatments for upwards of 168,000 patients, an increase of 3% compared to the corresponding number for 2012. During the first half of 2013, Fresenius Medical Care in North America delivered approximately 12.5 million treatments, an increase of 5% compared to the previous year's figure.

50.     Fresenius is vertically integrated in its business environment in that Fresenius both owns thousands of dialysis clinics and it also manufactures the dialysis machines and nearly all the medical products used in dialysis care including dialyzers, blood lines, needles, dialysis concentrate including GranuFlo® and NaturaLyte®.

51.     The Fresenius products division "sells" products, including GranuFlo® and NaturaLyte®, not only to its own clinics' division, but also too many of its leading competitors, including DaVita, DCI, Renal Ventures, and many others.

52.     GranuFlo® and NaturaLyte® formulations are unique in the dialysis treatment world in that they use sodium diacetate, a dry powder. Bicarbonate acts directly as a buffer. Sodium diacetate is a compound comprised of acetic acid and sodium acetate; it contains 4 mEq/L of acetic acid and 4 mEq/L of acetate, meaning that GranuFlo contains an extra 4 mEq/L for a total of 8 mEq/L of acetate in the final mixture, an amount much higher than typically found in acid concentrations. Through the use of sodium diacetate, GranuFlo doubles the amount of acetate that is introduced into the body during dialysis compared to formulations made with sodium acetate or acetic acid. This means that for dialysates made from GranuFlo® and NaturaLyte®, the total buffer level is 8 mEq/L *higher* than the bicarbonate level delivered from the bicarbonate concentrate.  Because of the increased buffer level caused by the GranuFlo® and NaturaLyte® products, individuals getting dialysis in which GranuFlo® and NaturaLyte® are used, receive much higher bicarbonate levels than expected which in turn causes metabolic alkalosis.

53.     During dialysis, the patient gets bicarbonate from two sources, the bicarbonate concentration which is prescribed and displayed on the hemodialysis machine, plus the acetate contained in GranuFlo, which is quickly converted in the liver into bicarbonate. This combination of bicarbonate and acetate, which is converted into bicarbonate, results in a "total buffer" value, because the bicarbonate and acetate "buffers," or neutralizes the acid that is produced in the body and built up in the blood.

54.     The total buffer is calculated by adding the bicarbonate level that is prescribed, plus the acetate in the dialysate product. To calculate the total buffer for GranuFlo, the prescribed bicarbonate is added to the 8 mEq/L contained in the sodium diacetate.

55.     Since diacetate is quickly converted to bicarbonate in the liver, the 8 mEq/L contained in GranuFlo should have been counted as part of the bicarbonate that the dialysis patient receives. Because of the increased buffer level caused by the GranuFlo product, patients receiving dialysis in which GranuFlo was used received much higher bicarbonate levels than expected.  In turn, this causes metabolic alkalosis and other adverse health consequences.

56.     This increased buffer level caused by the GranuFlo product, along with the associated increased risks of serious adverse health consequences, including sudden cardiac death, cardiopulmonary arrest, heart attack, heart failure, cardiac arrhythmias, stroke, and death, were not communicated by Fresenius to Plaintiffs, their respective physicians, treating clinicians, the public, or the FDA. Defendants' deliberate lack of effective product-related labeling, warnings, and instruction resulted in individuals receiving hemodialysis treatments in a manner that was neither safe nor effective, causing severe injury and death.

57.     This increased buffer level caused by the GranuFlo® and NaturaLyte® product, along with the associated increased risks of serious adverse health consequences including sudden cardiac death, cardiopulmonary arrest, heart attack, heart failure, cardiac arrhythmias, stroke and death was not communicated by the Defendants to the FDA, the public, its customers, treating clinicians, physicians, or nurses. Defendants' deliberate lack of effective product-related labeling, warnings, and instruction resulted in individuals receiving hemodialysis treatments in a manner that was neither safe nor effective causing severe injury or death.

**C.     Defendants' Knowledge: Defendants Knew That GranuFlo and/or Naturalyte Causes Serious Adverse Events**

58.     Fresenius issued several internal memos to its own clinics and their respective directors, starting in the year 2000.

59.     An internal memoranda concerning GranuFlo® Concentrate from Fresenius executives and medical staff dated December 7, 2000, authored by Dr. J. Michael Lazarus, head of the Fresenius Bicarbonate Committee (consisting of Julie Brennan, Catherine Dubinsky, Paul Genoa, Maureen Herget, Chinu Jani, Nancy Lew, Norma Ofsthun, Dave Updyke, Scott Walker) stated that Fresenius clinics were not accounting for the double amount of bicarbonate in GranuFlo® and NaturaLyte®.   Defendants also stated their clinics were having problems with acidosis, or too low bicarbonate levels.  The internal memo addressed that an "unacceptable number of patients" had pre-dialysis bicarbonate levels below 18 mEq/L.

60.     Defendants "fix" to this issue was to increase bicarbonate levels in patients to correct the acidosis problem, and even recommended setting bicarbonate dialysis levels on the dialysis machines in their own clinics to 35 - 40 mEq/L, even though Defendants acknowledged that GranuFlo added an extra 8 mEq/L of bicarbonate to the total buffer, as displayed in a Table in the internal memorandum.  This was recommended despite the fact that Defendants' clinics were confused, failed to account for, did not know or understand the higher levels of bicarbonate in GranuFlo® and NaturaLyte®.  Because of this, individuals receiving dialysis were actually receiving 43 – 48 mEq/L of bicarbonate, pushing many individuals into metabolic alkalosis.

61.     The internal memorandum dated December 7, 2000 had a "distribution list" appended to it. Among others, the following names were listed on the distribution list: Ben Lipps, Ron Kuerbitz, Rice Powell, Heinz Schmidt, Business Unit Compliance Officers, Business

1    Unit VPs of Quality, Clinical Quality Managers, DSD Regional Managers, DSD Regional

2    Quality Managers, and DSD Regional Vice Presidents.

3        62.    In an internal memo dated March 23, 2001 from Dr. J. Michael Lazarus,

4    Defendants acknowledged that there was "confusion regarding bicarbonate delivery and the

5    labeling on bicarbonate and acid concentrate products," and that their own clinics did not

6    understand the acetate equation, stating that "the bicarbonate and acetate delivered must be

7    added to determine the total buffer provided to the patient."

8        63.    The internal memorandum dated March 23, 2001 had a "distribution list"

9    appended to it. Among others, the following names were listed on the distribution list: Ben

10   Lipps, Ron Kuerbitz, Rice Powell, Business Unit Compliance Officers, Business Unit VPs of

11   Quality, Clinical Quality Managers, DSD Regional Managers, DSD Regional Quality Managers,

12   DSD Regional Technical Managers, and DSD Regional Vice Presidents.

13

14       64.    In an internal memo from Dr. J. Michael Lazarus to Fresenius Medical Directors

15   dated April 5, 2002, Fresenius applauded the increase in serum bicarbonate levels as a result of

16   their prior memos about the widespread instances of acidosis. Although the acidosis problem was

17   corrected, Fresenius was concerned that patients now had dangerously high levels of post-

18   dialysis alkalosis. The memo stated "Although we have moved in a positive direction with regard

19   to reducing acidosis, I am concerned about those patients who fall in the upper limits of the

20   distribution curve and who may have significant post-dialysis alkalosis." The memo revealed

21   that some directors ordered the same bicarbonate dialysate concentrations for the entire dialysis

22   facility. Fresenius suggested that bicarbonate therapy should be individualized for each patient.

23       65.    The internal memorandum dated April 5, 2002 had a "distribution list" appended

24   to it. Among others, the following names were listed on the distribution list: Ben Lipps, Ron

25   Kuerbitz, Rice Powell, Heinz Schmidt, Business Unit Compliance Officers, Business Unit VPs

26

27                                          18

28

of Quality, Clinical Quality Managers, DSD Regional Managers, DSD Regional Quality Managers, and DSD Regional Vice Presidents.

66.     Despite knowing that their own clinics did not know, understand and were confused about the high level of bicarbonate in the GranuFlo product, and that their own clinic populations were reaching dangerous levels of post-dialysis alkalosis, and knowing that alkalosis can cause sudden cardiac death, cardiopulmonary arrest, heart attack, heart failure, cardiac arrhythmias, stroke and death, Defendants failed or refused to warn Plaintiffs, their respective physicians, the public, non-Fresenius clinics, and the FDA.

67.     In an internal memo dated July 5, 2005, Fresenius disclosed that the mean bicarbonate levels in Fresenius patients rose from 20 mEq/L to 24.3 mEq/L, causing a widespread alkalosis problem. Fresenius noted that there was no significant increase in death risk until the patients' predialysis bicarbonate levels reached 28 mEq/L or above, "then the risk is *only approximately 20%*." Fresenius included a hazard risk analysis, which identified the risk of death corresponding to specific levels of bicarbonate. Fresenius suggested "modulating the increase in bicarbonate values," and reiterated that GranuFlo delivers an additional 8mEq/L. Furthermore, Fresenius stated that "the acetate concentration in GranuFlo is double that of traditional liquid acid concentrates," and that the "acetate contributed from…GranuFlo to the final dialysate is metabolized by the patient, converting it to bicarbonate. Therefore, it is important to understand and prescribe a dialysate bicarbonate concentration which, in combination with the acetate in the acid concentrate, delivers the desired total buffer."

68.     On October 30, 2008, Fresenius sent an internal memo notifying medical directors of changes made to the dialysate concentrations. Additionally, Fresenius stated "[w]e continue to strongly discourage the procedure of 'spiking.' Alteration of dialysate concentrate is potentially dangerous and we have concerns for human error. Alteration of the concentrate requires special

19

1 training and expertise to "manufacture" new concentrate formulations." Attached to this internal

2 memo distributed only to "Fresenius Medical Directors" was a "concentrate flashcard"

3 pertaining to GranuFlo Dry Acid Concentrate and Naturalyte Acid Concentrate. This "flashcard"

4 was "For FMS Use Only" and was meant as a "quick guide to the dialysate acid and bicarbonate

5 concentrates from Fresenius Medical Care."

6    69.    On April 13, 2009, Fresenius again acknowledged there was "some confusion

7 about the bicarbonate settings" and the prescriptions for bicarbonate. Fresenius specifically noted

8 that "the bicarbonate setting being delivered and displayed on the screens of the 2008 H & K

9 delivery machines represents only the bicarbonate level in the dialysate. This number does **NOT**

10 include the...8 mEq/L of acetate delivered by the GranuFlo acid powder." The memo instructed

11 directors to keep in mind that the "default" setting of bicarbonate was set at 33 mEq/L. It

12 *specifically* stated that "[i]f the facility uses GranuFlo (powder) there is an additional 8 mEq/L of

13 acetate, which is converted to bicarbonate. Therefore, the bicarbonate (or actually total buffer)

14 provided to the patient when using GranuFlo is 41 mEq/L."

15    70.    In an internal memo dated July 7, 2009, Fresenius disclosed that they developed

16 an interactive program to help guide physicians and staff to deliver the proper dialysate

17 concentrations to their patients. The memo again stated, acknowledging a deficiency in

18 understanding, that "the total buffer provided to the patient is the sum of the acetate in the acid

19 formula and the bicarbonate in the base formula."

20    71.    In the internal memos to its own Fresenius medical directors from 2005 to 2009,

21 Fresenius repeatedly acknowledged the increased risk of death with the use of GranuFlo, yet

22 continued to manufacture, distribute, and sell GranuFlo to non-Fresenius clinics and customers

23 throughout the country, all while failing or refusing to warn them of these defects, problems, and

24 the increased risk of injury and death. Defendants' cavalier attitude toward patients' lives was

evident when Defendants stated in their July 5, 2005 internal memo that although there is an increased risk of death, it is "only approximately 20%" or higher.

72.     In 2010, clinical problems associating GranuFlo use with patient health concerns such as alkalosis and cardiopulmonary arrest became evident to the Fresenius Medical Services division.

73.     In 2011, Fresenius composed a PowerPoint presentation that was meant to educate clinicians about patients receiving bicarbonate from two sources, the bicarbonate that was prescribed and displayed on the dialysis machine, and the acetate that is converted into bicarbonate.

74.     In a six page internal Fresenius memo to its own physicians and clinics dated November 4, 2011, Fresenius again unequivocally acknowledged and confirmed that "alkalosis is a significant risk factor associated with cardiopulmonary arrest." Fresenius, yet again, clarified for its clinics that the GranuFlo formulation has a total buffer equal to "prescribed bicarbonate plus 8," which is "due to 4 mEq/L of sodium acetate in addition to the 4 mEq/L of acetic acid."

75.     The November 4, 2011 memo refers to a case-control study that evaluated the risk factors in hemodialysis patients who suffered from cardiopulmonary arrest in Fresenius dialysis clinics between January 1 and December 31, 2010. Fresenius analyzed evidence gathered from the reported 941 patients who suffered cardiopulmonary arrest in 667 Fresenius clinics in 2010. A summary of the study, from the memo, is as follows:

a)     The major cause of alkalosis was "inappropriately high dialysate total buffer concentrations"

b)     In September 2011 the mean predialysis bicarbonate level was 24.1 mEq/L +/- 3.4 mEq/L, with over 25% of patients $\geq$ 26 mEq/L, 15% with > 28 mEq/L, and 3% with $\geq$ 30 mEq/L.

c)      Fresenius recognized that patients' pre-dialysis serum bicarbonate levels had progressively shifted upwards over time.

d)      The progressive shift towards higher predialysis serum bicarbonate levels implies that more patients have alkalosis prior to dialysis, but that an even higher percentage of patients have alkalosis post-dialysis

e)      Borderline elevated pre-dialysis bicarbonate levels and overt alkalosis are significantly associated with a 6 to 8 fold greater risk of cardiopulmonary arrest and sudden cardiac death

f)      The bicarbonate level entered into the machine underestimates the GranuFlo total buffer by 8 mEq/L

76.      In light of this information, Fresenius made recommendations to its own clinics and physicians. They strongly recommended that physicians adjust dialysate bicarbonate and total buffer prescriptions for individual patients, and that pre-dialysis serum bicarbonate levels >24 mEq/L should prompt immediate review of dialysate bicarbonate prescriptions.

77.      Also in the internal November 4, 2011 Fresenius memo, the company noted that its own patients' serum pre-dialysis bicarbonate levels had steadily increased from 2004 to 2011 which was during the time Defendants were increasing the use of GranuFlo in its own clinics. Despite Fresenius' knowledge of this patient safety risk, more non-Fresenius clinics continued to be sold the GranuFlo product, despite Defendants' knowledge of the risks associated with it.

78.      Top Fresenius executives, as well as the specifically and/or fictitiously named Defendants, knew about these risks, since the product's introduction, yet they did not warn the public, its customers, or the FDA, and instead continued to aggressively market the product.

79.      In fact, even after stating unequivocally that Fresenius knew there was a significant risk of death with GranuFlo, Defendants, their top executives, supervisory boards and committees made the decision to withhold this information from their customers, the FDA, and the non-Fresenius physicians and clinics that were using GranuFlo.

80.      Through information and belief, there was collusion involving individuals in several Fresenius departments, supervisory boards, committees and organizations to hide,

22

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

EXHIBIT A, PAGE 22

mislead, and obscure information about the extreme patient safety hazard associated with the use of GranuFlo products in order to maintain their market share as well as to minimize and diffuse the legal risks for Fresenius.

81.     During this time, until March 2012, Fresenius did not warn Plaintiffs, their respective physicians, non-Fresenius clinics, the public, or the FDA.

82.     In March 2012, the November 4, 2011 internal memo from Fresenius was leaked to the FDA. On March 27, 2012, the FDA responded by sending Fresenius an inquiry specifically requesting more information about their knowledge of the risks associated with using GranuFlo.

83.     Only after Defendants received this FDA inquiry did these Defendants then provide a scientifically ambiguous, two-page memorandum on March 29, 2012 to clinics and customers regarding the risk of metabolic alkalosis. This was the first time that Fresenius issued an external warning regarding GranuFlo, and reiterated that alkalosis is a significant risk factor associated with cardiopulmonary arrest. This memorandum to non-Fresenius clinics contained far less actionable information than the November 4, 2011 internal memo. This memorandum did not mention any patient blood levels and failed to discuss in any manner the most at-risk population of all, "acute" dialysis patients.  Further, this March 29th memo to non-Fresenius clinics and physicians contained only one of the ten medical references that the November 2011 internal FMC memo cited.

84.     From at least as early as 2000, Defendants knew their GranuFlo product delivered twice the usual level of bicarbonate to the patient, as compared to the typical liquid acid concentrates, and knew this caused an increased risk of cardiac arrest and death.  Despite this knowledge, Defendants did not make their findings public from 2000-2012, despite knowing that healthcare and hemodialysis providers needed such information if they were to safely and effectively use GranuFlo. Defendants only made their findings known after being prompted by the FDA.

85.     This failure to warn the public and Fresenius' customers, by withholding material information, of the increased risk of significant injury and death was solely because such

information would cause a severe loss of sales of GranuFlo.

86.     Yet despite these patient safety issues, the Fresenius product sales divisions continued to aggressively market the product and routinely bundled GranuFlo with other Fresenius products for pricing discounts.  Because of Defendants' aggressive marketing and sales, the GranuFlo product line steadily increased in its market share since its introduction in 2003 and as of 2012 was now being used by the majority of nearly 400,000 hemodialysis patients in the United States and State of California.

87.     On or about March 29, 2012, the FDA initiated a Class I recall for GranuFlo® Acid Concentrate and Naturalyte products manufactured and distributed from January 2008 through June 2012. A Class I recall, the most serious type, is issued when there is a "reasonable probability that the use of or exposure to a violative product will cause serious health consequences or death." The FDA issued a warning for GranuFlo rather than instigating a market withdrawal. The recall cautioned clinicians against dispensing the wrong dosages of acetate during dialysis treatment. The warning indicated that incorrect dosages may ultimately result in alkalosis and adverse health consequences such as cardiopulmonary arrest or death.

88.     On or about May 25, 2012, the FDA posted Safety Communication alert, notifying health care providers to consider the quantity of acetate in dialysate concentrations when determining a patent's dialysate prescription. This was addressing a complaint received by the FDA about dosing errors. "When metabolized, these potential sources of alkali can contribute to elevated bicarbonate levels in patients undergoing hemodialysis. This can contribute to metabolic alkalosis, which is a significant risk factor associated with cardiopulmonary arrest, low blood pressure, hypokalemia, hypoxemia, hypercapnia, and cardiac arrhythmia."

89.     On or about June 25, 2012, the FDA issued a Class I recall of GranuFlo (powder) acid concentrate. The reason for the recall was "risk of Alkalosis with acetate containing dialysis acid concentrates."

90.     On or about June 27, 2012, the FDA issued a safety notification regarding alkali dosing errors. The Notification stated that an incorrect prescription can lead to high serum bicarbonate levels, which can contribute to metabolic alkalosis.

91.     On or about June 28, 2012, Fresenius issued a letter regarding the recall, and to announce that following the FDA action, Renal Therapies Group "began the voluntary process of enhancing the labeling of the dialysate products and the hemodialysis machine operator's manuals." Fresenius classified the issue as an industry-wide problem that is only being addressed by Fresenius, stating that "there is some concern as to why only Fresenius products are being targeted by FDA."

92.     Despite knowing that their own clinics did not know, understand and were confused about the high level of bicarbonate in the GranuFlo® and NaturaLyte® product, and that their own clinic populations were reaching dangerous levels of post-dialysis alkalosis, and knowing that alkalosis can cause sudden cardiac death, cardiopulmonary arrest, heart attack, heart failure, cardiac arrhythmias, stroke and death, Defendants, including Defendants Weisman and Lipps, failed to change or improve their labeling on said products, failed to dispense the information regarding this confusion to its own customers, the medical community and the public, refused to warn the FDA, and instead continued to manufacture, distribute, sell and administer GranuFlo® and NaturaLyte® and reap tremendous profits, bonuses and stock options.

93.     At all times herein mentioned, top Fresenius executives, Directors, Board members, Committee members, including Defendants Weisman and Lipps, as well as the other specifically and/or fictitiously named Defendants, knew about the safety risks of GranuFlo® and NaturaLyte® since the products introduction through direct reporting, receipt of the above internal memorandums, reports, studies, data and  safety communications yet failed and refused to warn the public, its customers and the FDA despite having the duty to do so.

**D.      Fresenius Profits From Wrongdoing**

94.  .   The Defendants intentionally and recklessly proceeded with the manufacturing, marketing, advertising, sale and distribution of GranuFlo® and NaturaLyte® knowing that patients and consumers would be exposed to serious injury and death.

25

95.     The tortious actions and misdeeds of the Defendants as alleged herein are ongoing and at all times relevant hereto were ongoing and continuous and constituted ongoing and continuous torts.

96.     The Defendant sold GranuFlo® and NaturaLyte® by misleading users about the product and by failing to adequately warn the users of the potential serious dangers, which it knew or should have known, might result from using the products in dialysis.

97.     The Defendants widely and successfully marketed GranuFlo® and NaturaLyte® throughout the United States by, among other things, conducting promotional campaigns that misrepresented the safety and efficacy of the respective products, in order to induce widespread use and consumption.

98.     The Defendant made misrepresentations by means including but not limited to media advertisements and statements contained in sales literature.

99.     The Defendants intentionally ignored and/or withheld information regarding the increased risks of serious injury and death associated with and/or caused by GranuFlo® and NaturaLyte® at the time Defendants manufactured, marketed, advertised, promoted, sold and distributed the products.

100.    Defendants knew that if such increased risks of serious injury and/or death were disclosed, consumers and non-defendant healthcare providers would not purchase or prescribe GranuFlo® and NaturaLyte®.

101.    At all times relevant herein, Defendants engaged in a marketing campaign with the intent that consumers and non-defendant healthcare providers would request and purchase GranuFlo® and NaturaLyte®.

26

102.    Defendants made misrepresentations by means of media advertisements and statements contained in sales literature provided to the non-defendant healthcare providers and other professionals working in the dialysis field.

103.    As a result of the manufacturing and marketing of the Defendants' product GranuFlo® and NaturaLyte®, Defendants have reaped huge profits while concealing from the public the knowledge of the potential hazards associated with the products.

104.    The Defendants should have taken appropriate measures to ensure that GranuFlo® and NaturaLyte® would not be placed into the stream of commerce and/or should have provided full and proper warnings accurately and fully reflecting the risks associated with using the products.

105.    Prior to the manufacturing, sale and distribution of GranuFlo® and NaturaLyte®, Defendants, through their officers, directors and managing agents, had notice and knowledge, that GranuFlo® and NaturaLyte® presented substantial and unreasonable risks of harm to the consumer. As such, dialysis patients were unreasonably subjected to risk of injury or death from the consumption of Defendants' product, GranuFlo® and NaturaLyte®.

106.    Prior to the use of GranuFlo® and NaturaLyte® as alleged herein, the Defendants, through its officers, directors and managing agents, had notice and knowledge, that GranuFlo® and NaturaLyte® presented substantial and unreasonable risks of harm. As such, dialysis patients were unreasonably subjected to risk of injury or death from the consumption of Defendants' product, GranuFlo® and NaturaLyte®.

107.    Defendants, through their officers, directors and managing agents for the purpose of increasing sales and enhancing its profits, knowingly, intentionally, deliberately and recklessly failed to remedy the known defects of GranuFlo® and NaturaLyte®.

108.    Defendants and their officers, agents and managers intentionally proceeded with the manufacturing, marketing, advertising, promotion, distribution and sale of GranuFlo® and NaturaLyte®, knowing that persons would be exposed to serious injury and death, in order to advance their own pecuniary interests.

109.    Defendants' conduct was wanton, willful, malicious, and displayed a conscious disregard for the safety of the public.

110.    Defendants promoted the sale of GranuFlo® and NaturaLyte® by misleading healthcare professionals and professionals working in the dialysis field about the risks associated with using the products and by failing to warn and/or adequately warn the patients and healthcare professionals of increased risk of serious injury and/or death associated with and/or caused by GranuFlo® and NaturaLyte®.

111.    Rather than provide adequate warning, or any warning at all, Defendants instead engaged in a pattern of reckless behavior and manipulation in a successful effort to enhance profits at the expense of the public health.

112.    The above-described wrongful conduct was done with the knowledge, authorization, and ratification of officers, directors, and managing agents of Defendants.

113.    Plaintiffs request an award of additional damages for the sake of example and for the purpose of punishing such entities for its conduct, in an amount sufficiently large to deter Defendants from engaging in similar conduct in the future as Defendants' actions, and/or lack thereof, demonstrate gross negligence, reckless disregard, and intentional and malicious conduct, which caused in whole or in part, the damages alleged.

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

EXHIBIT A, PAGE 28

**PLAINTIFFS**

A.  VIOLET GERTRUDE ENTENDENCIA

114.    VIOLET GERTRUDE ENTENDENCIA received dialysis treatment that included the use of GranuFlo® and/or NaturaLyte® at the DaVita Manzanita Dialysis Clinic in Carmichael, California.

115.    At all times herein mentioned, and prior to the use of GranuFlo® and NaturaLyte® in VIOLET GERTRUDE ENTENDENCIA'S hemodialysis treatments, Defendants had knowledge that there was a significant increased risk of adverse cardiac events, including sudden cardiac arrest and death, during and following hemodialysis treatments associated with GranuFlo® and NaturaLyte® and despite this knowledge Fresenius continued to manufacture, market, distribute, sell and profit from sales of GranuFlo® and NaturaLyte® to non-Fresenius clinics despite Defendants' knowledge of the severe and life-threatening risks associated with it.

116.    Despite such knowledge, the Defendants, knowingly and deliberately failed to properly warn VIOLET GERTRUDE ENTENDENCIA, patients, consumers, dialysis clinics and the public of the increased risk of serious injury and/or death associated with using Granuflo® and NaturaLyte®.

117.    As a direct and proximate result of Defendants culpable acts, omissions, misrepresentations and failure to warn, VIOLET GERTRUDE ENTENDENCIA suffered significant injuries from the use of GranuFlo® and/or NaturaLyte® immediately following the completion of her hemodialysis treatment on January 9, 2012, including cardiac arrest and ventricular fibrillation, which caused her to be transported by EMS directly from DaVita to Mercy San Juan Medical Center.  Upon information and belief, VIOLET GERTRUDE ENTENDENCIA was also given hemodialysis using GranuFlo® and/or NaturaLyte® while hospitalized at Mercy San Juan Medical Center, at an Acute Hemodialysis DaVita Treatment

Center on January 10, 2012, during which she suffered another cardiac arrest. VIOLET GERTRUDE ENTENDENCIA remained at Mercy San Juan Medical Center until her untimely death on January 11, 2012.

118.    As a direct and proximate result of Defendants' negligence and otherwise culpable acts, omissions, and/or misrepresentations, VIOLET GERTRUDE ENTENDENCIA suffered injuries and damages including severe and permanent bodily injury, pain and suffering, disability, mental anguish and loss of capacity for the enjoyment of life, the expense of medical and nursing care, loss of wages, the loss of ability to earn money in the future, and death.

119.    As a direct and proximate consequence of Defendants' negligence, willful, wanton, reckless, fraudulent, oppressive, malicious and/or intentional acts, omissions, misrepresentations and/or otherwise culpable acts described herein, VIOLET GERTRUDE ENTENDENCIA sustained injuries and damages, including incurring the costs for necessary healthcare, treatment and medical services, loss of wages, mental anguish, diminished capacity for the enjoyment of life and diminished quality of life, aggravation of preexisting conditions and activation of latent conditions, and ultimately death.

120.    The Fresenius Defendants' conduct was committed with knowing, reckless, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers, including VIOLET GERTRUDE ENTENDENCIA, thereby entitling Plaintiffs to punitive and exemplary damages so as to punish and deter similar conduct in the future.

B. ELIZABETH MCINTYRE

121.    ELIZABETH MCINTYRE received dialysis treatments that included the use of GranuFlo® and/or NaturaLyte® at a dialysis clinic in Nevada.

122.    At all times herein mentioned, and prior to the use of GranuFlo® and NaturaLyte® in ELIZABETH MCINTYRE's hemodialysis treatments, Defendants had knowledge that there was a significant increased risk of adverse cardiac events, including sudden cardiac arrest and death, during and following hemodialysis treatments associated with GranuFlo® and NaturaLyte® and despite this knowledge Fresenius continued to manufacture, market, distribute, sell and profit from sales of GranuFlo® and NaturaLyte® to both non-Fresenius clinics and Fresenius Clinics despite Defendants' knowledge of the severe and life-threatening risks associated with it.

123.    Despite such knowledge, the Defendants, knowingly and deliberately failed to properly warn ELIZABETH MCINTYRE, patients, consumers, dialysis clinics and the public of the increased risk of serious injury and/or death associated with using Granuflo® and NaturaLyte®.

124.    As a direct and proximate result of Defendants culpable acts, omissions, misrepresentations and failure to warn, ELIZABETH MCINTYRE suffered significant injuries from the use of GranuFlo® and/or NaturaLyte® during hemodialysis, including cardiorespiratory arrest and death on October 21, 2008.

125.    As a direct and proximate result of Defendants' negligence and otherwise culpable acts, omissions, and/or misrepresentations, ELIZABETH MCINTYRE suffered injuries and damages including severe and permanent bodily injury, pain and suffering, disability, mental anguish and loss of capacity for the enjoyment of life, the expense of medical and nursing care, loss of wages, the loss of ability to earn money in the future, and death.

126.    As a direct and proximate consequence of Defendants' negligence, willful, wanton, reckless, fraudulent, oppressive, malicious and/or intentional acts, omissions, misrepresentations and/or otherwise culpable acts described herein, ELIZABETH MCINTYRE

1  sustained injuries and damages, including incurring the costs for necessary healthcare, treatment

2  and medical services, loss of wages, mental anguish, diminished capacity for the enjoyment of

3  life and diminished quality of life, aggravation of preexisting conditions and activation of latent

4  conditions, and ultimately death.

5       127.    The Fresenius Defendants' conduct was committed with knowing, reckless,

6  conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and

7  safety of consumers, including ELIZABETH MCINTYRE, thereby entitling Plaintiffs to

8  punitive and exemplary damages so as to punish and deter similar conduct in the future.

9

10

11  **FURTHER ALLEGATIONS**

12       128.    The GranuFlo® and/or NaturaLyte® products were lawfully obtained and

13  used as indicated in the dialysis treatment provided to Decedents.

14       129.    The GranuFlo® and/or NaturaLyte® were used in a manner consistent with

15  the indications in the label.

16       130.    The GranuFlo® and/or NaturaLyte® used during the dialysis treatment

17  material to the claims made herein was in a condition that was the same or substantially

18  similar to that in which the product was manufactured, distributed, and sold.

19       131.    Plaintiffs and Plaintiffs' Decedents were not aware and through diligent effort

20  were not able to discover the risk of serious injury and/or death associated with and/or caused by

21  using GranuFlo® and/or NaturaLyte®.

22       132.    Decedents would not have purchased and used GranuFlo® and/or

23  NaturaLyte® or consented to its use had Defendants properly disclosed the risks of serious

24  injury and/or death associated and/or caused by the product.

25

26

27  32

28

133.    When GranuFlo® and/or NaturaLyte® were used in dialysis treatment provided to Decedents, neither the product label, packaging, instructions, nor the packages containing the product, provided adequate instructions and/or warnings regarding the use of GranuFlo® and/or NaturaLyte®, including the risk of injury and death.

134.    As a direct and proximate consequence of Defendants' negligence, willful, wanton, reckless, fraudulent, oppressive, malicious and/or intentional acts, omissions, misrepresentations and/or otherwise culpable acts described herein, Plaintiffs sustained injuries and damages, including incurring the costs for necessary healthcare, treatment and medical services, disability, bodily injury, loss of wages, mental anguish, diminished capacity or loss of enjoyment of life and quality of life, aggravation of preexisting conditions and activation of latent conditions, and ultimately in some cases death.

135.    Plaintiffs' injuries and damages include the costs of physician care, monitoring, treatment, medications, supplies, and funeral and burial expenses. Plaintiffs have experienced extensive pain and suffering and severe emotional distress.

136.    The Defendants' conduct was committed with knowing, reckless, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers, including Plaintiffs, thereby entitling Plaintiff to punitive and exemplary damages so as to punish and deter similar conduct in the future.

## DELAYED DISCOVERY & FRAUDULENT CONCEALMENT

137.    The discovery rule applies to toll the running of the statue of limitations until Plaintiff knew, or through the exercise of reasonable care and diligence, should have known of the existence of his claims against all Defendants. The nature of decedent's injuries, death, and subsequent damages, and their relationship to the use of GranuFlo® and NaturaLyte®, was not discussed, and through reasonable care and diligence could not have been discovered.

138.     Defendants, through their affirmative misrepresentations and omissions, actively concealed from Decedent and any non-defendant healthcare providers the true and significant risks associated with GranuFlo® and NaturaLyte®.

139.     As a result of Defendants' actions, Plaintiffs and the non-defendant healthcare providers involved in the dialysis treatment provided to Plaintiffs were unaware, and could not have reasonably known or have learned through reasonable diligence, that Plaintiffs had been exposed to the risks identified in this Complaint, and that those risks were the result of these acts, omissions, and misrepresentations.

140.     Plaintiffs first learned of the risks associated with NaturaLyte and GranuFlo and Defendants' concealment of those risks in or after January 2013, when they first saw television advertisements about litigation involving the acid concentrates.

141.     Accordingly, no limitations period ought to accrue until such time as Plaintiffs knew or reasonably should have known of some causal connection between the use of GranuFlo® and NaturaLyte® and/or the harm suffered as a result. As such, Plaintiffs hereby invoke the discovery rule based on the fact that this Complaint is filed well within the time Plaintiffs knew or should have known the facts as alleged herein.

142.     Additionally, the accrual and running of any applicable statute of limitations has been tolled by reason of Defendants' fraudulent concealment.

143.     Additionally, each Defendant is equitably estopped from asserting any limitations defense by virtue of its fraudulent concealment and other misconduct as described in this Complaint.

144.     Additionally, the limitations period is tolled under principles of equitable tolling.

## CAUSES OF ACTION

### I.  FIRST CAUSE OF ACTION
### STRICT PRODUCTS LIABILITY

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further alleges:

145.    At all times relevant and material to this action, the Defendants designed, tested, manufactured, packages, marketed, advertised, distributed, promoted, and sold GranuFlo® and NaturaLyte®, placing the products into the stream of commerce.

146.    At all times relevant and material, GranuFlo® and NaturaLyte® were designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed by Defendants in a defective and/or unreasonably dangerous condition.

147.    GranuFlo® and NaturaLyte® were expected to reach, and did reach, users and/or consumers, including Plaintiffs, without substantial change in the defective and/or unreasonably dangerous condition.

148.    GranuFlo® and/or NaturaLyte® were used during the dialysis treatment provided to Plaintiffs in the foreseeable manner normally intended, recommended, promoted, and/or marketed by Defendants.

149.    GranuFlo® and/or NaturaLyte® were defective and unreasonably dangerous when each product entered the stream of commerce in one or more of the following particulars:

      a.    GranuFlo® and NaturaLyte® contained manufacturing defects in that the each product caused and/or increased the risk of experiencing an adverse cardiovascular event, including but not limited to death, sudden cardiac death, heart attack, cardiac arrest, and/or congestive heart failure.

35

b.      GranuFlo® and NaturaLyte® were not safe because the health risks associated with each product outweighed the benefits.

c.      GranuFlo® and NaturaLyte® were marketed and promoted for use in hemodialysis   treatment, when they carried an unreasonable and unnecessary risk of serious injury and death.

d.      GranuFlo® and NaturaLyte® were insufficiently and/or inadequately tested by Defendants.

e.      GranuFlo® and NaturaLyte® were not safe due, in part, to inadequate and/or defective instructions and inadequate and defective warnings provided by Defendants.

f.      GranuFlo® and NaturaLyte® were marketed and promoted for use as safe treatment in hemodialysis treatment, when they were not. Said products were unreasonably dangerous in that, as designed, each product failed to perform safely when used in dialysis treatment provided to ordinary consumers, including Plaintiffs.

g.      GranuFlo® and NaturaLyte® were unreasonably dangerous in that, as designed, the risks of serious injury and/or death, posed by using the products exceeded any benefits the products were designed to or might in fact bestow.

h.      GranuFlo® and NaturaLyte® were defective in design in that the products neither bore, nor were packaged with, nor accompanied by, warnings adequate to alert users and dialysis patients, including Plaintiffs, of the increased risks associated with using the products including, but not limited to, the risk of serious injury and/or death.

i.      GranuFlo® and NaturaLyte® were not accompanied by adequate warnings and/or instructions for use that included inadequate information to fully apprise the

36

medical, pharmaceutical and/or scientific communities, and users and/or consumers of the potential risks and serious side effects associated with using the products.

j.   GranuFlo® and NaturaLyte® were unsafe for normal or reasonably anticipated use. Said products were defective and/or unreasonably dangerous in design, construction and/or composition.

k.   GranuFlo® and NaturaLyte® were defective and/or unreasonably dangerous because the products did not conform to an express warranty of the manufacturer about the product.

l.   GranuFlo® and NaturaLyte® were defective and/or unreasonably dangerous due to inadequate warnings, and/or inadequate clinical trials, testing and study, and inadequate reporting regarding the results of the clinical trials, testing and/or study.

150.   GranuFlo® and NaturaLyte® as manufactured and supplied by the Defendants were defective due to inadequate post-marketing warnings or instructions because, after Defendants knew or should have known of the risk of injuries from use, Defendants failed to provide adequate warnings to the medical community and the consumers, to whom it was directly marketing and advertising; and, further, it continued to affirmatively promote GranuFlo® and NaturaLyte® as safe and effective.

151.   A reasonable person who had actual knowledge of the increased risks associated with using GranuFlo® and NaturaLyte® would have concluded that GranuFlo® and NaturaLyte® should not have been marketed and/or used in dialysis treatment.

152.   Despite the fact that Defendants knew or should have known of the defective nature of GranuFlo® and NaturaLyte®, Defendants continued to design, manufacture and sell GranuFlo® and NaturaLyte® so as to maximize sales and profits at the expense of the public

health and safety. Defendant thus acted with conscious and deliberate disregard of the foreseeable harm caused by GranuFlo® and NaturaLyte®.

153.    Plaintiffs and the non-defendant health care providers involved could not, through the exercise of reasonable care, have discovered the risk of serious injury and/or death associated with and/or caused by GranuFlo® and NaturaLyte®.

154.    As a direct and proximate cause of the defective and/or unreasonably dangerous condition of GranuFlo® and NaturaLyte®, the products were used during the dialysis treatment provided to Plaintiffs. As a result, Plaintiffs suffered the injuries and damages alleged herein.

155.    Information given by Defendants to the medical community and to the consumers concerning the safety and efficacy of GranuFlo® and NaturaLyte®, especially the information contained in the advertising and promotional material, did not accurately reflect the risks associated with using the products.

156.    Had adequate information regarding the safety of the products been provided to Plaintiffs and/or the non-defendant healthcare providers involved in the dialysis provided to Plaintiffs, GranuFlo® and NaturaLyte® would not have been used in the dialysis treatment provided to Plaintiffs. Had adequate warnings and/or instructions been provided, GranuFlo® and NaturaLyte® would not have been used in the dialysis treatment provided to Plaintiffs.

157.    Defendants acted with conscious and/or deliberate disregard of the foreseeable harm caused by use of its products.

158.    As a direct and proximate consequence of Defendants negligence, willful, wanton, and/or intentional acts, omissions, misrepresentations and/or otherwise culpable acts Plaintiffs and plaintiffs suffered the injuries and damages alleged herein.

**WHEREFORE,** Plaintiffs demand judgment against Defendants and seek compensatory, exemplary and punitive damages, together with interest, the costs of suit and attorneys' fees and such other and further relief as this Court deems just and proper.

## II. SECOND CAUSE OF ACTION
### NEGLIGENCE

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further alleges:

159. Defendants negligently manufactured, designed, tested, researched, developed, labeled, packaged, distributed, promoted, marketed, advertised, and sold GranuFlo® and NaturaLyte® in this district and throughout the United States.

160. At all times relevant and material hereto, Defendants had a duty to exercise reasonable care in the design, manufacture, research and development, testing, processing, advertising, marketing, labeling, packaging, distribution, promotion and sale of GranuFlo® and NaturaLyte®.

161. Defendants breached their duty and were negligent in their actions, misrepresentations, and omissions in numerous ways including the following:

a. Failing to test GranuFlo® and NaturaLyte® properly and thoroughly before releasing the products on the market;

b. Failing to analyze properly and thoroughly the data resulting from the pre-marketing tests of GranuFlo® and NaturaLyte®;

c. Failing to report to the FDA, the medical community, and the general public those data resulting from pre- and post-marketing tests of GranuFlo® and NaturaLyte® which indicated risks associated with using the products;

d. Failing to conduct adequate post-market monitoring and surveillance of GranuFlo® and NaturaLyte® and analysis of adverse event reports;

39

e. Designing, manufacturing, marketing, advertising, distributing, and selling GranuFlo® and NaturaLyte® to consumers, including Plaintiffs, without an adequate warning of risks associated with using the products and without proper and/or adequate instructions to avoid the harm which could foresee ably occur as a result of using the products;

f. Failing to exercise due care when advertising and promoting GranuFlo® and NaturaLyte®;

g. Negligently continuing to manufacture, market, advertise, and distribute GranuFlo® and NaturaLyte® after Defendant knew or should have known of the risks of serious injury and/or death associated with using the products;

h. Failing to use due care in the preparation, design and development of GranuFlo® and NaturaLyte® to prevent and/or avoid and/or minimize the risk of injury and/or death to individuals when the products were used;

i. Failing to conduct adequate pre-clinical testing and research, post-marketing surveillance, and exposure studies to determine the safety of Granuflo® and NaturaLyte®;

j. Failing to completely, accurately and in a timely fashion, disclose the results of the pre-marketing testing and post-marketing surveillance and testing to Plaintiffs, consumers, the medical community, and the FDA;

k. Failing to accompany Granuflo® and NaturaLyte® with proper warnings regarding all possible risks associated with using the products;

l. Failing to use due care in the manufacture, inspection, and labeling of GranuFlo® and NaturaLyte® to prevent risk of injuries to individuals who used the products;

40

m.      Failing to use due care in the promotion and selling of GranuFlo® and NaturaLyte® to prevent the risk of injuries to individuals when the products were used in dialysis;

n.      Failing to provide adequate and accurate training and information to the sales representatives who sold the products;

o.      Failing to provide adequate and accurate training and information to non-defendant healthcare providers that used GranuFlo® and NaturaLyte®;

p.      Failing to educate non-defendant healthcare providers and the public about the safest use of the products;

q.      Failing to give non-defendant healthcare provider's adequate information to weigh the risks of serious injury and/or death associated with the products;

r.      Failing to test and inspect GranuFlo® and NaturaLyte® in a reasonable manner in order to ascertain whether or not it was safe and proper for the purpose for which it was designed, manufactured, and sold;

s.      Failing to utilize and implement a reasonably safe design in the manufacture of GranuFlo® and NaturaLyte®;

t.      Failing to warn Plaintiffs of the danger of heart attack, cardiac arrest, sudden cardiac death, and other adverse medical conditions from the use of GranuFlo® and NaturaLyte®;

u.      Failing to label GranuFlo® and NaturaLyte® to adequately warn Plaintiffs of the increased risk of death and/or injury associated with the products including the increased risk of heart attack, cardiac arrest, sudden cardiac death, and other adverse medical conditions;

v.      Failing (by lack of adequate training, instruction, monitoring, and hiring principles) to ensure that its clinicians, nurses, contractors, employees, and physicians knew how

41

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

to properly use all hemodialysis products in a manner that was safe and effective for the recipients; and

162.    Defendants knew or should have known that GranuFlo® and NaturaLyte® had unreasonably dangerous risks and caused serious side effects of which Plaintiffs would not have been aware.

163.    Defendants nevertheless advertised, marketed, sold and distributed GranuFlo® and NaturaLyte® despite the fact that the Defendants knew or should have known of the increased risks associated with using the products.

164.    Defendants and each of them, including Defendants Weisman and Lipps, had a duty to warn the FDA, its customers, the medical community and public about the increased risks of injury and death and failed and refused to do so placing profits, stock options and bonuses ahead of patients' safety and lives.

165.    Defendants knew or should have known that GranuFlo® and NaturaLyte® had unreasonably dangerous risks and caused serious side effects of which the non-defendant healthcare providers involved in the dialysis treatment provided to Decedent would not be aware. Defendants nevertheless advertised, marketed, sold and distributed GranuFlo® and NaturaLyte®.

166.    Defendants are guilty of negligence *per se* in that the Defendants violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301, *et seq.*, and the Sherman Food, Drug and Cosmetic Law, as well as other applicable laws, statutes, and regulations.

167.    The Defendants' acts and omissions constitute an adulteration and/or misbranding as defined by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §331. Persons, such as Plaintiffs, were the parties intended to be protected by such legislation. This is negligence per se.

168.    Despite the fact that Defendant knew or should have known that GranuFlo® and NaturaLyte® increased the risk of serious injury and/or death, Defendant continued to

42

manufacture, market, advertise, promote, sale and distribute GranuFlo® and NaturaLyte® to consumers, including Plaintiffs.

169.     Defendants recklessly, and/or negligently represented to Plaintiffs and the Decedent, as well as any non- defendant physicians, and other persons and professionals, Defendants knew  would justifiably  rely and accept,  that the GranuFlo® and NaturaLyte® were safe to ingest and that the utility of the products outweighed any risk in use for their intended purposes.

170.     Defendants recklessly and/or negligently failed to disclose to Plaintiffs and Decedent, and others, important safety and efficacy information, thereby suppressing material facts about GranuFlo® and NaturaLyte®, while having a duty to disclose such information, which duty arose from their actions of making, marketing, promoting, distributing and selling pharmaceutical products as alleged.

171.     Defendants led Plaintiffs and Decedent to rely upon the safety of GranuFlo® and NaturaLyte® in its use.

172.     Defendants' false representations  were recklessly and/or negligently made in that GranuFlo® and NaturaLyte® in fact caused injury, were unsafe, and the benefits of its use were far outweighed by the risk associated with use thereof.

173.     Defendants knew or should have known that its representations and/or omissions were false. Defendants made such false, negligent and/or reckless representations with the intent or purpose that Plaintiffs and Decedent, and any non-defendant physicians would rely upon such representations, leading to the use of GranuFlo® and NaturaLyte® as described.

43

174.     Defendants recklessly and/or negligently misrepresented and/or omitted information with respect to GranuFlo® and NaturaLyte® as set forth above.

175.     Defendants omitted, suppressed and/or concealed material facts concerning the dangers and risk of injuries associated with the use of GranuFlo® and NaturaLyte® including, serious injury and death.  Furthermore, Defendants' purpose was willfully blind to, ignored, downplayed, avoided, and/or otherwise understated the serious nature of the risks associated with the use of GranuFlo® and NaturaLyte® in order to increase sales.

176.     At the time Defendants made these misrepresentations and/or omissions, they knew or should have known that GranuFlo® and NaturaLyte® were unreasonably dangerous and not what Defendants had represented to Plaintiffs and Decedent, as well as the medical community, the FDA and the consuming public.

177.     Defendants' misrepresentations and/or omissions were undertaken with an intent that doctors and patients, including Plaintiffs and Decedent, rely upon them.

178.     Plaintiffs and Decedent, as well as any non-defendant physicians, relied on and were induced by Defendants' misrepresentations, omissions, and/or active concealment of the dangers of GranuFlo® and NaturaLyte®, to employ these products.

179.     Plaintiffs and Decedent, as well as treating medical community did not know that these representations were false and therefore were justified relied upon.

180.     As a direct and proximate consequence of Defendants' negligent, willful, wanton, and/or intentional acts, omissions, misrepresentations and/or otherwise culpable acts described herein, Plaintiffs and Decedent sustained injuries and damages as alleged herein.

181.     Had Plaintiffs and Decedent been aware of the increased risk of side effects associated with GranuFlo® and NaturaLyte® and the relative efficacy of GranuFlo® and

1   NaturaLyte® compared with other readily available products, these products would not

2   have been used. .

3       182.    As a direct and proximate consequence of Defendants' negligence, willful,

4   wanton, and/or intentional acts, omissions, misrepresentations and/or otherwise culpable acts

5   described herein, Plaintiffs and Decedent sustained the injuries and damages alleged herein.

6       WHEREFORE, Plaintiffs demand judgment against Defendants and seeks compensatory

7   damages, and exemplary and punitive damages together with interest, the costs of suit and

8   attorneys' fees and such other and further relief as this Court deems just and proper.

9
                  **III.  THIRD CAUSE OF ACTION**
10                        **FAILURE TO WARN**

11      Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set

12  forth in full in this cause of action, and further alleges:

13      183.    GranuFlo® and NaturaLyte® are unreasonably dangerous, even when used in

14  a foreseeable manner as designed and intended by the Defendants.

15      184.    Defendants failed to warn and/or adequately warn Plaintiffs, consumers,

16  dialysis patients, physicians, and healthcare professionals of the increased health risks

17  associated with using GranuFlo® and NaturaLyte®.

18      185.    Plaintiffs did not have the same knowledge as Defendants and no adequate

19  warning was communicated to Plaintiffs.

20      186.    Defendants had a continuing duty to warn consumers and healthcare

21  professionals of increased health risks associated with its products, and negligently and/or

22  wantonly breached its duty as follows:

23          a.    Failed to include warnings and/or adequate warnings of the increased

24  risks of death and serious injury associated with using GranuFlo® and NaturaLyte®;

25
26
27
28

b.      Failed to provide adequate and/or proper instructions regarding the proper use of GranuFlo® and NaturaLyte®;

c.      Failed to provide adequate and/or proper instructions regarding monitoring dialysis patients before, during and after dialysis when GranuFlo® and NaturaLyte® were used;

d.      Failed to inform Decedent that GranuFlo® and NaturaLyte® had not been adequately tested to determine the safety and risks associated with using the products;

e.      Failed to inform Decedent that the clinicians, nurses, and/or physicians were not adequately trained, instructed, credentialed, and prepared for proper use of all GranuFlo® and/or NaturaLyte® hemodialysis products in a manner that was safe and effective.

187.    Defendants and each of them, including Defendants Weisman and Lipps, had a duty to warn the FDA, its customers, the medical community and public about the increased risks of injury and death and failed and refused to do so placing profits, stock options and bonuses ahead of patients' safety and lives.

188.    Defendants breached their duty to warn consumers, including Decedent, of the risks associated with GranuFlo® and NaturaLyte®.

189.    As a direct and proximate result of the actions and inactions of the Defendants as set forth above, Decedent sustained injuries and damages alleged herein.

WHEREFORE, Plaintiffs demand judgment against Defendant and seeks compensatory damages, and exemplary and punitive damages together with interest, the costs of suit and attorneys' fees and such other and further relief as this Court deems just and proper.

## IV.   FOURTH CAUSE OF ACTION
### BREACH OF WARRANT OF MERCHANTABILITY

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further alleges:

46

190.     Defendants knew and intended that GranuFlo® and NaturaLyte® be used in dialysis treatment when the products were placed into the stream of commerce.

191.     Defendants knew and intended that GranuFlo® and NaturaLyte® be used m dialysis treatment as the product(s) were used during the dialysis treatment provided to Plaintiffs.

192.     Defendants expressly and/or impliedly warranted to Decedent that use of GranuFlo® and NaturaLyte® was a safe for use during dialysis treatment.

193.     Decedent reasonably relied upon the expertise, skill, judgment and knowledge of the Defendants and upon the express and/or implied warranty that GranuFlo® and NaturaLyte® were safe, of merchantable quality, and fit for use during dialysis treatment.

194.     The healthcare professionals involved in the dialysis treatment provided to Plaintiffs reasonably relied upon the expertise, skill, judgment and knowledge of the Defendants and upon the express and/or implied warranty that GranuFlo® and NaturaLyte® were safe, of merchantable quality, and fit for use during dialysis treatment.

195.     The GranuFlo® and/or NaturaLyte® used during the dialysis treatment provided to Plaintiffs was not safe, of merchantable quality, and/or not fit for use during dialysis treatment.

196.     The GranuFlo® and/or NaturaLyte® used during the dialysis treatment provided to Plaintiffs was neither safe nor fit for use in dialysis.

197.     As a direct and proximate result of the breach of warranties by the Defendants, Decedent sustained injuries and damages alleged herein.

WHEREFORE, Plaintiffs demand judgment against Defendants and seeks compensatory damages, and exemplary and punitive damages together with interest, the costs of suit and attorneys' fees and such other and further relief as this Court deems just and proper.

## V.   FIFTH CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further alleges:

198.   Defendants expressly represented to Plaintiffs, consumers and the medical community that GranuFlo® and NaturaLyte® were:

    a.   Safe;

    b.   Efficacious;

    c.   fit for use in dialysis treatment;

    d.   of merchantable quality;

    e.   adequately tested;

    f.   did not increase the risk of death;

    g.   did not increase the risk of experiencing any adverse cardiovascular event.

199.   Defendants breached the express warranties as follows:

    a.   Defendants misrepresented the safety of GranuFlo® and NaturaLyte® in the products' labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and/or regulatory submissions;

    b.   Defendants misrepresented the risks associated with using Granuflo® and NaturaLyte®;

    c.   Defendants withheld and/or concealed and/or downplayed the information and/or evidence that the products were associated with an increased risk of serious injury and/or death;

    d.   Defendants misrepresented that GranuFlo® and NaturaLyte® were as safe, and/or safer than other similar products used in dialysis treatment;

48

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

e.      Defendants fraudulently concealed information about the safety of GranuFlo® and NaturaLyte® including information that the products were not safer than alternative dialysis products available on the market; and

f.      Defendants misrepresented information regarding the true safety and/or efficacy of GranuFlo® and NaturaLyte®.

200.    GranuFlo® and NaturaLyte® did not conform to Defendants' express representations and warranties.

201.    At all relevant times, including during the period that Plaintiffs received dialysis treatment, GranuFlo® and NaturaLyte® did not perform as safely as an ordinary consumer would expect when used as intended or in a reasonably foreseeable manner.

202.    At all relevant times, including during the period that Plaintiffs received dialysis treatment, GranuFlo® and NaturaLyte® did not perform in accordance with the Defendants' representations.

203.    In deciding to purchase and use GranuFlo® and NaturaLyte® Plaintiffs, other consumers, and the medical community relied upon Defendants' express warranties.

204.    As a direct and proximate consequence of Defendants' negligence, willful, wanton, and/or intentional acts, omissions, misrepresentations and/or otherwise culpable acts described herein, Plaintiffs sustained injuries and damages alleged herein.

WHEREFORE, Plaintiffs demand judgment against Defendant and seeks compensatory damages, and exemplary and punitive damages together with interest, the costs of suit and attorneys' fees and such other and further relief as this Court deems just and proper.

## VI.   SIXTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further alleges:

49

205. At all relevant and material times, Defendants manufactured, distributed, advertised, promoted, and sold GranuFlo® and NaturaLyte®.

206. Defendants knew and intended that GranuFlo® and NaturaLyte® be used in dialysis treatment when the products were placed into the stream of commerce.

207. Defendants knew and intended that GranuFlo® and NaturaLyte® be used in dialysis treatment as the product(s) were used during the dialysis treatment provided to Plaintiffs.

208. Defendants expressly and/or impliedly warranted to Decedent that use of GranuFlo® and NaturaLyte® was a safe for use during dialysis treatment.

209. Plaintiffs, and the non-defendant healthcare providers providing dialysis treatment to Plaintiffs, reasonably relied upon the expertise, skill, judgment and knowledge of the Defendants and upon the Defendants' express and/or implied warranty that GranuFlo® and NaturaLyte® were safe, of merchantable quality, and fit for use during dialysis treatment.

210. The GranuFlo® and/or NaturaLyte® used during the dialysis treatment provided to Plaintiffs were not safe, of merchantable quality, nor fit for use during dialysis treatment.

211. The GranuFlo® and/or NaturaLyte® used during the dialysis treatment provided to Plaintiffs was neither safe nor fit for use in dialysis.

212. As a direct and proximate result of the breach of warranties by the Defendant, Plaintiffs sustained injuries and damages alleged herein.

213. Defendants were aware that consumers, including Decedent, would use GranuFlo® and NaturaLyte® in dialysis treatment; which is to say that Decedent was a foreseeable user of Defendants' products, GranuFlo® and NaturaLyte®.

214. Plaintiffs were at all relevant times in privity with Defendants.

50

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

215.    GranuFlo® and NaturaLyte® were expected to reach and did in fact reach consumers, including Decedent, without substantial change in the condition in which the products were manufactured and sold by Defendant.

216.    Defendants breached various implied warranties with respect to GranuFlo® and NaturaLyte® as set forth above.

217.    Defendants breached the implied warranties in that GranuFlo® and NaturaLyte® did not conform to Defendants' implied representations and warranties.

218.    Plaintiffs, and the non-defendant healthcare providers providing dialysis treatment to Plaintiffs, reasonably relied upon one and/or several of the Defendants' implied warranties.

219.    Plaintiffs, and the non-defendant healthcare providers providing dialysis treatment to Plaintiffs, used GranuFlo® and/or NaturaLyte® in as intended and directed by the Defendants and in a foreseeable manner as intended, recommended, promoted, and/or marketed by Defendants.

220.    Defendants breached one or several of the implied warranties provided to and relied on by Decedent.

221.    As a direct and proximate consequence of Defendants' negligence, willful, wanton, and/or intentional acts, omissions, misrepresentations and/or otherwise culpable acts described herein, Plaintiffs sustained injuries, damages and death alleged.

WHEREFORE, Plaintiffs demand judgment against Defendants and seek compensatory, exemplary and punitive damages together with interest, the costs of suit and attorneys' fees and such other and further relief as this Court deems just and proper.

## VII.  SEVENTH CAUSE OF ACTION
### FRAUD

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further alleges:

222.     At all relevant and material times, Defendants expressly and/or impliedly warranted GranuFlo® and NaturaLyte® products were safe, of merchantable quality and fit for use in dialysis treatment.

223.     Defendants' superior knowledge and expertise, its relationship of trust and confidence with doctors and the public, its specific knowledge regarding the risks and dangers of GranuFlo® and NaturaLyte® and its intentional dissemination of promotional and marketing information about GranuFlo® and NaturaLyte® for the purpose of maximizing its sales, each gave rise to the affirmative duty to meaningfully disclose and provide all material information about the risks and harms associated with the products.

224.     At all times herein mentioned Defendants fraudulently represented to Plaintiffs and Decedent, physicians, and other persons and professionals, upon whom Defendants knew would justifiably rely, as well as the public at large, that GranuFlo® and NaturaLyte® were safe for use in dialysis treatment and that the utility of each product outweighed any risk associated with using the products.

225.     Defendants intentionally failed to disclose to Plaintiffs and Decedent, as well as others important safety and injury information, thereby suppressing material facts about the products, while having a duty to disclose such information, which duty arose, in part, from the Defendants designing, manufacturing, making, marketing, advertising, promoting, distributing and selling such products.

226.     The false representations of Defendants were fraudulently made, with the intent or purpose that Plaintiffs and Decedent and/or the non-defendant healthcare providers

52

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

1    involved in providing dialysis treatment to Decedent, would justifiably rely, leading to the use

2    of GranuFlo® and NaturaLyte®.

3        227.    Defendants made fraudulent misrepresentations with respect to GranuFlo®

4    and NaturaLyte® in the manner set forth above and incorporated herein.

5        228.    By these acts, Defendants willfully, wantonly, and recklessly disregarded their

6    duty to provide truthful representations regarding the safety and risk of GranuFlo® and

7    NaturaLyte®.

8        229.    Defendants made these misrepresentations with the intent that non-defendant

9    doctors and patients, including Plaintiffs, rely upon them.

10       230.    Defendants' misrepresentations were made with the intent of defrauding and

11   deceiving Plaintiffs and Decedent, other consumers, and the medical community to induce

12   and encourage the sale of GranuFlo® and NaturaLyte®.

13

14       231.    Defendants' fraudulent representations evidence their callous, reckless,

15   willful, and depraved indifference to the health, safety, and welfare of consumers, including

16   Plaintiffs and Decedent.

17       232.    Defendants omitted, misrepresented, suppressed and/or concealed material facts

18   concerning the dangers and risk of injuries associated with the use of GranuFlo® and

19   NaturaLyte® including the increased risk of serious injury and/or death as well as the fact that

20   the product was unreasonably dangerous.

21       233.    Defendants' purpose was willfully blind to, ignored, downplayed, avoided,

22   and/or otherwise understated the serious nature of the risks associated with the use of

23   GranuFlo® and NaturaLyte® in order to increase sales.

24

25

26

27                                               53

28

234.     Defendants undertook the false and/or misleading representations and concealment with an intent that doctors and patients, including Plaintiffs and Decedent, rely upon them.

235.     These deliberate acts caused healthcare professionals involved in providing dialysis treatment to Decedent, to rely and act thereon, and thus to render the treatment provided to Decedent.

236.     Plaintiffs and Decedent as well as the treating medical community did not know that these representations were false and/or misleading and were justified in in their reliance.

237.     Defendants had sole access to material facts concerning the dangers and unreasonable risks of GranuFlo® and NaturaLyte®.

238.     The intentional concealment of information by Defendants about the substantial risks of serious injury and/or death associated with GranuFlo® and NaturaLyte®, was known by Defendants to be wrongful.

239.     Defendants made the concealment of information and the misrepresentations about GranuFlo® and NaturaLyte® with the intent that doctors and patients, including Decedent, rely upon them.

240.     Had Defendants not fraudulently concealed such information, GranuFlo® and/or NaturaLyte® would not have been used during the dialysis treatment provided to Decedent.

241.     Had Decedent been aware of the increased risks of serious injury and/or death associated with GranuFlo® and NaturaLyte® Decedent would not have allowed GranuFlo® and NaturaLyte® to be used during dialysis.

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

242.     Had any non-defendant healthcare professionals involved in providing dialysis treatment to Decedent been aware of the increased risks of serious injury and/or death associated with GranuFlo® and NaturaLyte® they would not have used them during dialysis.

243.     As a direct and proximate result of Defendants' fraudulent misrepresentations and intentional concealment of facts, upon which Decedent reasonably relied, Decedent suffered injuries and damages as alleged herein.

244.     As a direct and proximate consequence of Defendants' negligence, willful, wanton, and/or intentional acts, omissions, misrepresentations and/or otherwise culpable acts described herein, Decedent sustained the injuries and damages as alleged herein.

WHEREFORE, Plaintiffs demand judgment against Defendants and seeks compensatory, exemplary and punitive damages together with interest, the costs of suit and attorneys' fees and such other and further relief as this Court deems just and proper.

## VIII. <u>EIGHTH CAUSE OF ACTION</u>
### UNJUST ENRICHMENT

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further alleges:

245.     At all times relevant to this action, Defendants designed, advertised, marketed, promoted, manufactured, distributed, supplied, and/or sold GranuFlo® and NaturaLyte®.

246.     At all times relevant to this action, Defendants and each of them, including Defendants Weisman and Lipps, knew about the increased risk of injury and death of GranuFlo® and/or NaturaLyte®.

247.     At all times relevant to this action, Defendants and each of them, including Defendants Weisman and Lipps, had a duty to warn the FDA, its customers, the medical community and public about the increased risks of injury and death and failed and refused to do so placing profits, stock options and bonuses ahead of patients' safety and lives.

55

248.     GranuFlo® and/or NaturaLyte® was used during dialysis treatment provided to Plaintiffs.

249.     Defendants received payment for the cost of NaturaLyte and/or GranuFlo purchased and used in the dialysis treatment provided to Decedent.

250.     Decedent did not receive the safe and effective product intended.

251.     It is inequitable and unjust for Defendants to retain this money because Decedent did not receive the product Defendants represented GranuFlo® and NaturaLyte® to be.

WHEREFORE, Plaintiffs demand judgment against each Defendant and seeks disgorgement of profits, equitable relief, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## IX.   NINTH CAUSE OF ACTION
### WRONGFUL DEATH

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further alleges:

252.     As a direct and proximate result of Defendants' negligence and otherwise culpable acts described herein, Plaintiffs received GranuFlo® and/or NaturaLyte® which caused him to sustain injuries and damages outlined herein and caused death.

253.     Plaintiffs' injuries and death as alleged more fully herein directly resulted from Defendants' negligent and otherwise culpable acts, omissions, and/or misrepresentations.

254.     As a result of Defendants' actions causing Plaintiffs' injury and subsequent death, Plaintiffs are entitled to all damages under all the circumstances that may be just, including but not limited to, the loss of their father, Plaintiffs' love, companionship, comfort,

56

care, assistance, protection, affection, society, moral support, training, guidance, benefits, support, services as well as funeral and burial expenses.

## X. TENTH CAUSE OF ACTION
## SURVIVORSHIP

255. Plaintiffs re-allege and incorporate herein by reference each of the foregoing paragraphs of this Complaint as though fully set forth herein.

256. As a direct and proximate result of defects in GranuFlo® and NaturaLyte® and the wrongful conduct, acts, omissions, and fraudulent misrepresentations of Defendants, the Decedent sustained the injuries and damages described herein.

257. As a further direct and proximate result of defects in GranuFlo® and NaturaLyte® and the wrongful conduct, acts, omissions, and fraudulent misrepresentations of Defendants, Decedent incurred special damages, in the form of the reasonable value of services rendered for medical care for the injuries that were incurred prior to death.

258. Plaintiffs are the personal representatives or successors in interest of the estate of the Decedents and are authorized to bring these survival actions pursuant to Code of Civil Procedure §§ 377.20 and 377.30, et seq.

259. As a further direct and proximate result of defects in GranuFlo® and NaturaLyte® and the wrongful conduct, acts, omissions, and fraudulent misrepresentations of Defendants, Decedent incurred special damages including, inter alia, funeral and burial expenses.

260. Plaintiffs are the personal representatives or successors in interest of the estates of the Decedents and are authorized to bring these survival actions pursuant to Code of Civil Procedure §§ 377.20 and 377.30, et seq.

261. The acts, conduct, practices and omissions of Defendants, and each of them, as alleged throughout this Complaint were fraudulent, willful and malicious and were undertaken

57

with a conscious disregard for the rights of Plaintiffs and Decedents, as well as other users of GranuFlo® and NaturaLyte®, and were undertaken for the primary purpose of increasing Defendants' profits from the sale and distribution of GranuFlo® and NaturaLyte®.

262.    Said outrageous and unconscionable conduct by Defendants warrants an award of exemplary and punitive damages against each Defendant..

263.    Plaintiffs are the personal representatives or successors in interest of the estates of the Decedents and are authorized to bring these survival actions pursuant to Code of Civil Procedure §§ 377.20 and 377.30, et seq. and are thereby entitled to recover punitive damages against Defendants herein.

## XI.   ELEVENTH CAUSE OF ACTION
### LOSS OF CONSORTIUM

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further alleges:

264.    Plaintiffs at all times relevant hereto were married to, or children of, Decedent Plaintiffs.

265.    As a result of the injuries and eventual death suffered by Decedent Plaintiffs, Plaintiffs have suffered and will suffer loss of consortium. Plaintiffs have suffered, and will continue to suffer in the future, mental anguish, loss of support, love, companionship, affection, society, sexual relations, solace and other damages.

266.    Accordingly, Plaintiffs seeks and are entitled to compensatory damages in an amount to be determined at trial.

### GLOBAL PRAYER FOR RELIEF

58

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth here in full and further prays:

1.    So far as the law and this Court allows, Plaintiffs demand judgment against each Defendant on each count as follows:

    a.    Compensatory damages for the described losses with respect to each cause of action;

    b.    Past medical expenses and burial expenses;

    c.    Past and future lost wages and loss of earning capacity;

    e.    Past and future emotional distress;

    g.    Wrongful death;

    h.    Consequential damages;

    i.    Disgorgement of profits;

    j.    Restitution;

    k.    Punitive damages with respect to each cause of action;

    l.    Reasonable attorneys' fees where recoverable;

    m.    Costs of this action;

    n.    Pre-judgment and all other interest recoverable; and

    o.    Such other additional and further relief as Plaintiff may be entitled to in law or in equity.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all issues.

Dated:                           Respectfully Submitted,

59

By _____

Lowell W. Finson, CA Bar #275586
**PHILLIPS LAW FIRM**
2101 Rosecrans Avenue, Suite 3290
El Segundo, CA 90245
Tel: (877)480-9142 / Fax: (213)330-0346
lowell@justiceforyou.com

J. Paul Sizemore (CA Bar #254981)
Jaime E. Moss (CA Bar #285761)
**SIZEMORE LAW FIRM, PLC**
2101 Rosecrans Avenue, Suite 3290
El Segundo, CA 90245
Telephone:(310) 322-8800/ Fax: (310)322-8811
paul@sizemorelawfirm.com
moss@sizemorelawfirm.com

Scott M. Hendler (TX Bar # 09445500) (*pro hac* to
be filed)
Sean Lyons (TX Bar # 00792280) (*pro hac* to be
filed)
**HENDLER LAW, PC**
Park Terrace
1301 W. 25th Street, Suite 400
Austin, TX 78705
Telephone:  (512) 439-3200
shendler@hendlerlaw.com
slyons@hendlerlaw.com

Michael J. Brickman (SC Bar # 000874) (*pro hac* to
be filed)
Kimberly Keevers Palmer (SC Bar # 66496) (*pro
hac* to be filed)
Nina Fields Britt (SC Bar # 68294) (*pro hac* to be
filed)
**RICHARDSON, PATRICK,**
**WESTBROOK & BRICKMAN, LLC**
1017 Chuck Dawley Boulevard
Post Office Box 1007
Mt. Pleasant, South Carolina 29464
Telephone:  (843) 727-6500
mbrickman@rpwb.com
kkeevers@rpwb.com
nfields@rpwb.com

*Attorneys for Plaintiffs*

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

EXHIBIT A, PAGE 60

# Exhibit "1"

# CONFIDENTIAL CONTENT ENCLOSED

# PLEASE REFER TO ORIGNAL DOCUMENT



# Exhibit "2"

I, George Kapule Entendencia, declare as follows:

1.   I am the widower of Violet Gertrude Entendencia, the Decedent in this action ("Decedent"). I, George Kapule Entendencia, am a party to the above-entitled action. I have firsthand knowledge of the facts set forth in this declaration and, if called to do so, could testify competently to them, except for those facts stated upon information and belief, and as to those facts, I believe them to be true.

2.   My wife, Violet Gertrude Entendencia ("Decedent") died on January 11, 2012 at Mercy San Juan Medical Center located in Carmichael, California.

3.   No proceeding is now pending in California for the administration of decedent's estate.

4.   I am Decedent's co-successor in interest (as defined in § 377.11 of the California Code of Civil Procedure) along with, William Sylva and Marc Sylva, also parties to the above-entitled action, to Decedent's estate. I succeed to the Decedent's interest in the action or proceeding.

5.   No other person has a superior right to commence the action or proceeding or to be substituted for the Decedent in the pending action or proceeding.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct:

DATED: January 9, 2014

GEORGE KAPULE ENTENDENCIA,
Declarant

2
*DECLARATION OF GEORGE KAPULE ENTENDENCIA (C.C.P. 377.32)*

I, William Sylva, declare as follows:

1. I am the son of Violet Gertrude Entendencia, the Decedent in this action ("Decedent"). I, William Sylva, am a party to the above-entitled action. I have firsthand knowledge of the facts set forth in this declaration and, if called to do so, could testify competently to them, except for those facts stated upon information and belief, and as to those facts, I believe them to be true.

2. My mother, Violet Gertrude Entendencia ("Decedent") died on January 11, 2012 at Mercy San Juan Medical Center located in Carmichael, California.

3. No proceeding is now pending in California for the administration of decedent's estate.

4. I am Decedent's co-successor in interest (as defined in § 377.11 of the California Code of Civil Procedure) along with, George Kapule Entendencia and Marc Sylva, also parties to the above-entitled action, to Decedent's estate. I succeed to the Decedent's interest in the action or proceeding.

5. No other person has a superior right to commence the action or proceeding or to be substituted for the Decedent in the pending action or proceeding.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct:

DATED: January 8, 2014

_____
WILLIAM SYLVA, Declarant

I, Marc Sylva, declare as follows:

1.   I am the son of Violet Gertrude Entendencia, the Decedent in this action ("Decedent"). I, Marc Sylva, am a party to the above-entitled action. I have firsthand knowledge of the facts set forth in this declaration and, if called to do so, could testify competently to them, except for those facts stated upon information and belief, and as to those facts, I believe them to be true.

2.   My mother, Violet Gertrude Entendencia ("Decedent") died on January 11, 2012 at Mercy San Juan Medical Center located in Carmichael, California.

3.   No proceeding is now pending in California for the administration of decedent's estate.

4.   I am Decedent's co-successor in interest (as defined in § 377.11 of the California Code of Civil Procedure) along with, George Kapule Entendencia and William Sylva, also parties to the above-entitled action, to Decedent's estate. I succeed to the Decedent's interest in the action or proceeding.

5.   No other person has a superior right to commence the action or proceeding or to be substituted for the Decedent in the pending action or proceeding.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED: January 8, 2014

_____
MARC SYLVA, Declarant

2

*DECLARATION OF GEORGE KAPULE ENTENDENCIA (C.C.P. 377.32)*

# Exhibit "3"

# CONFIDENTIAL CONTENT ENCLOSED

# PLEASE REFER TO ORIGNAL DOCUMENT

# Exhibit "4"

1  | ELIZABETH MCINTYRE, deceased,                )
   | individually and on behalf of all other heirs of )
2  | decedent,                                      )
   |                                                )
3  |                   Plaintiffs;                  )
   |                                                )
4  |          vs.                                   )
5  | FRESENIUS USA, INC., FRESENIUS USA             )
   | MANUFACTURING, INC., FRESENIUS                 )
6  | MEDICAL CARE HOLDINGS, INC.,                   )
7  | FRESENIUS MEDICAL CARE NORTH                   )
   | AMERICA, INC., FRESENIUS USA                   )
8  | MARKETING, INC., WALTER L.                     )
   | WEISMAN, BEN LIPPS, JOHN DOES,                 )
9  | MEDICAL DIRECTORS, and DOES 1-100              )
10 | INCLUSIVE                                      )
   |                                                )
11 |                  Defendants.                   )

I, David Mcintyre, am a party to the above-entitled action and declare as follows:

1.      I am the widower of Elizabeth Mcintyre, the Decedent in this action

("Decedent").  I have firsthand knowledge of the facts set forth in this declaration and, if called

to do so, could testify competently to them, except for those facts stated upon information and

belief, and as to those facts, I believe them to be true.

2.      My wife, Elizabeth Mcintyre, ("Decedent") died on October 21, 2008 at North

Vista Hospital located in North Las Vegas, Nevada. A certified copy of the Death Certificate is

attached hereto as Exhibit A.

3.     No proceeding is now pending in California for administration of the Decedent's estate.

4.     I am a successor in interest, pursuant to CCP § 377.11, and succeed to Decedent's interest in this action.

5.     No other person has a superior right to commence the action or proceeding or to be substituted for the Decedent in the pending action or proceeding.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on: January 9th, 2014

x _____
        Declarant

3
DECLARATION OF SUCCESSOR IN INTEREST PURSUANT TO CCP § 377.32

# Exhibit A



```
1   GIBSON, DUNN & CRUTCHER LLP
    JOHN D. van LOBEN SELS, SBN 201354
2   1530 Page Mill Road
    Palo Alto, California 94304
3   Telephone:   (650) 849-5300
    Facsimile:   (650) 849-5333
4
5   GIBSON, DUNN & CRUTCHER LLP
    GLENN K. BEATON
6   MONIQUE MICHAL DRAKE, SBN 167188
    1801 California Street, Suite 4100
7   Denver, Colorado 80202
    Telephone:   (303) 298-5906
8   Facsimile:   (303) 296-5310

9   Attorneys for Plaintiffs
    FRESENIUS USA, INC. and FRESENIUS
    MEDICAL CARE HOLDINGS, INC.
10
```

ORIGINAL FILED

APR -4 AM 11: 31

RICHARD L. WICKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

BZ

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

C 03 - 1431

| | |
|---|---|
| FRESENIUS USA, INC., a Massachusetts corporation; and FRESENIUS MEDICAL CARE HOLDINGS, INC., a New York corporation,<br><br>        Plaintiffs,<br><br>    v.<br><br>BAXTER INTERNATIONAL INC., a Delaware corporation; and BAXTER HEALTHCARE CORPORATION, a Delaware Corporation,<br><br>        Defendants. | CASE NO.<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT OF PATENT INVALIDITY AND NONINFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>**CERTIFICATION OF INTERESTED ENTITIES OR PERSONS** |

Plaintiffs Fresenius Medical Care Holdings, Inc. and Fresenius USA, Inc. (collectively, "Plaintiffs"), allege as follows:

I.

**JURISDICTION AND VENUE**

1.  This action arises under the patent laws of the United States, 35 U.S.C. § 1, et seq. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) and the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

1

COMPLAINT FOR DECLARATORY JUDGMENT

2.      Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this district, a substantial part of the property that is the subject of the action is situated in this district, and, upon information and belief, the defendants are transacting and doing business in this district.

## II.

### INTRADISTRICT ASSIGNMENT

3.      This is a patent action subject to district-wide assignment under Local Rule 3-2(c).

## III.

### THE PARTIES

4.      Plaintiff Fresenius USA, Inc. ("FUSA") is, and at all times herein mentioned was, a corporation organized and existing under the laws of Massachusetts with its principal place of business in Walnut Creek, California.  FUSA is a wholly owned subsidiary of Fresenius.  FUSA has a research and manufacturing facility in Walnut Creek, California, which develops and manufactures products at issue in this action. Plaintiff Fresenius Medical Care Holdings, Inc. d/b/a Fresenius Medical Care North America ("Fresenius") is a corporation organized and existing under the laws of New York.  Fresenius is the country's leading full-service provider of dialysis care.  Fresenius, through various affiliates, treats approximately 79,600 patients in its approximately 1080 U.S. dialysis clinics, some of which are located in this district.

5.  .    Defendants Baxter Healthcare Corporation and Baxter International Inc. ("Defendants") are affiliated corporations.  Both defendants are corporations organized and existing under the laws of Delaware.  One or both of Defendants make dialysis machines, equipment and supplies which it sells to dialysis clinics.

6.      Plaintiffs are informed and believe that Defendants are engaged in the regular and systematic transaction of business in this judicial district through, *inter alia*, the distribution and sale of their products in this judicial district.

Gibson, Dunn &
Crutcher LLP

2

COMPLAINT FOR DECLARATORY JUDGMENT

## IV.

## FACTUAL BACKGROUND

**A.     Dialysis Technology.**

7.     Dialysis is a process that aids patients whose renal function has deteriorated to the point where their bodies cannot adequately rid themselves of toxins. In hemodialysis, the patient's blood is pumped through a dialyzer (artificial kidney), which cleans the blood of impurities, such as urea and creatinine. In peritoneal dialysis, a quantity of dialysis fluid is pumped into the patient's peritoneal cavity to receive impurities by transfer across the peritoneal membrane. Plaintiffs have developed certain machines and equipment for use in dialysis.

8.     Defendants, singly or jointly, are the purported assignees and record owners of U.S. Patent No. 6,284,131; No. 5,247,434; No. 5,326,476; No. 5,486,286 and 5,744,027 (collectively, "Defendants' Patents"). Copies of Defendants' Patents are submitted as Exhibits A-E.

**B.     Justiciable Controversy.**

9.     Defendants, singly or jointly, have asserted to one or both of Plaintiffs that Plaintiffs' manufacture or sale of certain equipment and methods infringe Defendants' Patents.

10.     Plaintiffs deny that any of their activities or products infringe any valid claim of any of Defendants' Patents, or any other valid, enforceable patent, if any, purportedly owned by Defendants.

11.     As a result of Defendants' actions, Plaintiffs have a reasonable apprehension that Defendants will commence litigation on Defendants' Patents.

12.     There is a substantial, continuing and justiciable controversy between Plaintiffs and Defendants as to Defendants' right to threaten or maintain suit for infringement of Defendants' Patents, as to the validity, scope and enforceability thereof, and as to whether either of Plaintiffs infringes any valid and enforceable claims of Defendants' Patents.

<div align="center">3</div>

COMPLAINT FOR DECLARATORY JUDGMENT

## V.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (For Declaratory Judgment of Noninfringement)

13.   Plaintiffs incorporate by reference as though set forth in full here paragraphs 1 through 13, inclusive.

14.   Plaintiffs allege that their activities do not directly infringe, do not induce infringement, and do not contributorily infringe any valid and enforceable claims, if any, of Defendants' Patents or any other valid or enforceable patent, if any, of Defendants.

15.   By reason of the proceedings in the United States Patent and Trademark Office during the prosecution of the application that resulted in the issuance of Defendants' Patents, as shown by the file history thereof, and related patent applications and proceedings, Defendants are estopped to claim for Defendants' Patents a construction that would cause them to cover any activities of Plaintiffs.

### SECOND CAUSE OF ACTION
### (For Declaratory Judgment of Invalidity)

16.   Plaintiffs incorporate by reference as though set forth in full here paragraphs 1 through 16, inclusive.

17.   Plaintiffs allege on information and belief that Defendants' Patents are invalid.  In view of the prior art, and further in view of basic deficiencies in Defendants' Patents, they fail to satisfy one or more of the provisions for patentability set forth in Title 35, Part II, United States Code, particularly §§ 101, 102, 103 and 112, and the rules, regulations, and law pertaining thereto.

## VI.

## REQUEST FOR RELIEF

WHEREFORE Plaintiffs pray for relief against Defendants as follows:

1.   For a declaratory judgment that:

   a.   Plaintiffs infringe no valid and enforceable claim of Defendants' Patents;

   b.   Defendants' Patents are invalid; and

4

Gibson, Dunn & Crutcher LLP

1         c.     Defendants, and those acting in concert with them or acting with

2 knowledge of the judgment herein, are without right or authority to threaten or maintain suit against

3 Plaintiffs, or users of Plaintiffs' products or services, for alleged infringement of Defendants' Patents.

4         2.     For an injunction prohibiting Defendants, their officers, agents, servants, employees,

5 and attorneys, and those persons in active concert or participation with them who receive actual

6 notice thereof, from initiating infringement litigation against, and from threatening, Plaintiffs or

7 purchasers or users of Plaintiffs' products or services with infringement litigation or charging any of

8 them either verbally or in writing with infringement of Defendants' Patents, or representing to any of

9 them that infringement has occurred, because of any activities of Plaintiffs.

10         3.     For their costs and reasonable attorneys' fees incurred herein.

11         4.     For such other and further relief as the Court may deem appropriate.

12                          **VII.**

13                 **JURY DEMAND**

14     Plaintiff requests a jury trial on all issues so triable.

15 DATED: April 4, 2003

16                          GIBSON, DUNN & CRUTCHER LLP
                                       GLENN K. BEATON

17                          MONIQUE MICHAL DRAKE
                                         JOHN D. van LOBEN SELS

18

19                          By:_____

20                                John D. van Loben Sels

21

22                          Attorneys for Plaintiffs
                          FRESENIUS USA, INC. and FRESENIUS MEDICAL

23                          CARE HOLDINGS, INC.

24

25 60095315_1.DOC

26

27

28

                                  5

Gibson, Dunn &
Crutcher LLP

COMPLAINT FOR DECLARATORY JUDGMENT

### CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

Pursuant to Civil L.R. 3-16, the undersigned certifies that the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding:  Fresenius AG (a German corporation), and Fresenius Medical Care AG (a German corporation).

DATED: April 4, 2003

John D. van Loben Sels

COMPLAINT FOR DECLARATORY JUDGMENT

# Exhibit B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BAXTER INTERNATIONAL, INC. and<br>BAXTER HEALTHCARE S.A.,<br><br>      Plaintiffs,<br><br>    v.<br><br>FRESENIUS MEDICAL CARE HOLDINGS,<br>INC. d/b/a FRESENIUS<br>MEDICAL CARE NORTH AMERICA and<br>FRESENIUS USA, INC.,<br><br>      Defendants. | Civil Action No. 12-cv-06890<br><br>Honorable John Z. Lee,<br>Judge Presiding<br><br>Honorable Sidney I. Schenkier,<br>Magistrate Judge<br><br><br>**JURY TRIAL DEMANDED** |

## DEFENDANTS FRESENIUS MEDICAL CARE HOLDINGS, INC. D/B/A FRESENIUS MEDICAL CARE NORTH AMERICA AND FRESENIUS USA, INC.'S ANSWER TO PLAINTIFFS' COMPLAINT

Defendants Fresenius Medical Care Holdings, Inc. d/b/a Fresenius Medical Care North America and Fresenius USA, Inc. (collectively, "Fresenius"), through their undersigned attorneys, and for their Answer and Affirmative Defenses to the Complaint (the "Complaint") of Baxter International, Inc. and Baxter Healthcare S.A. ("Baxter"), state as follows:

### COMPLAINT NO. 1.

This is an action arising under the patent laws of the United States, 35 U.S.C. §§ 1 et seq. and is brought by Baxter against Fresenius for Fresenius' infringement of U.S. Patent Nos. 7,815,595 ("the '595 patent"), 8,066,671 ("the '671 patent"), 8,075,526 ("the '526 patent"), and 8,206,338 ("the '338 patent") (collectively, "Patents-in-Suit").

### ANSWER:

Fresenius admits that Baxter's Complaint purports to raise a claim under Title 35 of the United States Code. Fresenius denies that it infringes any valid claim of the Patents-in-Suit.

1

**COMPLAINT NO. 2.**

Baxter International, Inc. is a Delaware corporation with its principal place of business in Deerfield, Illinois. Baxter Healthcare S.A. is a Swiss corporation with its principal place of business in Opfikon, Switzerland. Baxter is a leading provider of dialysis-related products and services to assist patients with kidney disease. Baxter's research and development facility for its dialysis-related products is located in Round Lake, Illinois.

**ANSWER:**

Fresenius admits that Baxter International, Inc. is a Delaware corporation with its principal place of business in Deerfield, Illinois. Fresenius admits that Baxter Healthcare S.A. is a Swiss corporation with its principal place of business in Opfikon, Switzerland. Fresenius admits that Baxter is a provider of dialysis-related products, and that Baxter has a research and development facility in Round Lake, Illinois. Fresenius does not have sufficient information to admit or deny the remainder of the allegations in paragraph 1 and therefore denies them.

**COMPLAINT NO. 3.**

Fresenius Medical Care Holdings, Inc. d/b/a Fresenius Medical Care North America is a New York corporation with its principal place of business in Waltham, Massachusetts. Fresenius USA, Inc. is a Massachusetts corporation with its principal place of business in Walnut Creek, California. Fresenius makes dialysis machines, equipment and supplies, provides dialysis services and operates dialysis clinics across the United States.

**ANSWER:**

Fresenius admits the allegations in paragraph 3.

**COMPLAINT NO. 4.**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States.

**ANSWER:**

Fresenius admits that the Court has jurisdiction over the subject matter of the Complaint pursuant to 28 U.S.C. §§ 1331 and 1338(a).

2

Dated: September 20, 2012

Respectfully submitted,

By:    /s/ Brian A. Sher
Brian A. Sher (No. 6196964)
brian.sher@bryancave.com
Dmitry Shifrin (No. 6279415)
ddshifrin@bryancave.com
BRYAN CAVE LLP
161 N. Clark Street, Suite 4300
Chicago, Illinois 60601
Telephone: (312) 602-5000
Facsimile:  (312) 698 7470

Juanita R. Brooks (admitted *pro hac vice*)
brooks@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Michael E. Florey (admitted *pro hac vice*)
florey@fr.com
FISH & RICHARDSON P.C.
60 South Sixth Street, Suite 3300
Minneapolis, MN 55402
Telephone: (612) 335-5070
Facsimile: (612) 288-9696

Attorneys for Defendants
FRESENIUS MEDICAL CARE
HOLDINGS, INC. d/b/a FRESENIUS
MEDICAL CARE NORTH AMERICA and
FRESENIUS USA, INC.

14

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 20th day of September, 2012, a copy of the

foregoing was served upon the following counsel of record via the Court's Electronic Filing

System:

Michael J. Abernathy
David A. Rammelt
Sanjay K. Murthy
Robert J. Barz
Devon C. Beane
K&L GATES LLP
70 W. Madison St., Suite 3100
Chicago, IL 60602
Tel: (312) 372-1121
Fax: (312) 827-800

Michael J. Bettinger
Irene I. Yang (*pro hac vice*)
K&L GATES LLP
4 Embarcadero Center, Suite 1200
San Francisco, CA 94111
Tel: (415) 882-8200
Fax: (415) 882-8220

*Attorneys for Plaintiff Baxter*
*International, Inc. and Baxter*
*Healthcare S.A..*

/s/  Brian A. Sher
One of its Attorneys

15

EXHIBIT A, PAGE 83

# Exhibit C

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| BAXTER HEALTHCARE CORP., ET AL. | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:06-CV-438 (TJW) |
| | § | |
| FRESENIUS MEDICAL CARE HOLDINGS, | § | |
| INC. d/b/a FRESENIUS MEDICAL CARE | § | |
| NORTH AMERICA, ET AL. | § | |
|     Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a). The Court has carefully considered the parties' written submissions. Defendants' Motion to Transfer Venue is GRANTED and it is ordered that this case be transferred to the Northern District of California for the reasons set forth in this opinion.

**I.    Background**

Plaintiffs Baxter Healthcare Corporation ("Baxter") and Deka Products L.P. ("Deka") filed suit against Defendants Fresenius Medical Care Holdings, Inc. d/b/a Fresenius Medical Care North America ("Fresenius North America") and Fresenius USA, Inc. ("Fresenius USA" and collectively "Fresenius") for infringement of U.S. Patent No. 5,421,823 (the "'823 Patent") entitled "Peritoneal Dialysis Methods that Emulate Gravity Flow." Baxter is the exclusive licensee of the '823 Patent.

Baxter is a Delaware corporation with its principal place of business in Deerfield, Illinois. Deka is New Hampshire limited partnership with its principal place of business in Manchester, New Hampshire. Fresenius North America is a New York corporation with its principal place of business in Lexington, Massachusetts, and Fresenius USA is a Massachusetts corporation with its principal

place of business in Walnut Creek, California. Fresenius operates several dialysis clinics in the Eastern District of Texas.

Plaintiffs claim that Defendants' Fresenius Liberty Cycler peritoneal dialysis system ("Liberty Cycler") infringes the '823 Patent. Plaintiffs do not claim that any other device, manufactured or sold by Fresenius, infringes the '823 Patent. According to the defendants, the Liberty Cycler device is currently in the developmental stage and, to date, only 15 prototypes have been produced. Nearly all of the activities related to the Liberty Cycler's development have taken place in Fresenius's Walnut Creek facility in California. Defendants contend that they have not manufactured, used, sold, or offered to sale the Liberty Cycler device in the Eastern District of Texas.

## II.    Discussion

"For the convenience of parties, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). It is within the district court's sound discretion whether to transfer venue under section 1404(a). *Mohamed v. Mazda Corp.*, 90 F. Supp. 2d 757, 768 (E.D. Tex. 2000). When considering whether to transfer venue, the district court "must exercise its discretion in light of the particular circumstances of the case." *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001); *In re Triton Ltd. Sec. Litig.*, 70 F. Supp. 2d 678, 688 (E. D. Tex. 1999) (stating that district courts have the discretion to decide whether to transfer venue according to "individualized, case-by-case consideration of convenience and fairness").

When deciding whether to transfer venue, the court balances private and public interest factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). The private factors are the

2

following: (1) the plaintiffs' choice of forum; (2) the convenience of the parties and material witnesses; (3) the place of the alleged wrong; (4) the cost of obtaining the attendance of witnesses and the availability of the compulsory process; (5) the accessibility and location of sources of proof; and (6) the possibility of delay and prejudice if transfer is granted. *Mohamed v. Mazda Corp.*, 90 F. Supp. 2d 757, 771 (E.D. Tex. 2000). The public interest factors involve the following: (1) the administrative difficulties caused by court congestion; (2) the local interest in adjudicating local disputes; (3) the unfairness of burdening citizens in an unrelated forum with jury duty; and (4) the avoidance of unnecessary problems in conflict of laws. *Id.*

### A.    Private Factors

1.    Plaintiffs' Choice of Forum

The plaintiffs' choice of forum is neither controlling nor determinative, but is still a factor to be considered. *In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003). The plaintiffs' choice of forum, however, will not be disturbed unless it is clearly outweighed by other factors. *Shoemake v. Union Pac. R.R. Co.*, 233 F. Supp. 2d 828, 830 (E.D. Tex. 2002). The plaintiffs chose to bring their suit in the Eastern District of Texas, Marshall Division. Therefore, this factor weighs against transfer.

2.    The Convenience of the Parties and the Witnesses

The Court will first assess the convenience of the parties. However, the convenience of the parties is accorded less weight in a transfer analysis than the convenience of non-party witnesses. *Shoemake v. Union Pac. R.R. Co.*, 233 F. Supp. 2d 828, 832 (E.D. Tex. 2002). Fresenius USA's principal place of business is in California; and, therefore, it would be more convenient for Fresenius USA if this case were transferred to California. The other parties to this suit, however, are

3

incorporated or headquartered in various states other than Texas, including Delaware, New Hampshire, Massachusetts, and Illinois. These parties would be inconvenienced regardless of whether the case is transferred. In the Court's view, the convenience of the parties weighs slightly in favor of transfer.

The Court now considers the convenience of the witnesses. Generally, in a venue transfer analysis, the most important factor considered is whether "key fact witnesses" will be substantially inconvenienced if the court should deny transfer. *Mohamed,* 90 F. Supp. 2d at 774. Further, the convenience of non-party witnesses weighs more heavily in favor of transfer than the convenience of party witnesses. *Shoemake,* 233 F. Supp. 2d at 832. The moving party must "specifically identify key witnesses and outline the substance of their testimony." *Mohamed,* 90 F. Supp. 2d at 775 (quoting *Hupp v. Siroflex of America, Inc.,* 848 F. Supp. 744, 749 (S.D. Tex. 1994)).

In their moving papers, the defendants have listed three non-party witnesses located in California and have detailed the substance of their testimony. *Defendants' Motion to Transfer Venue ("Defendants' Motion")* at 11-13. The defendants also claim that there are many Fresenius employees in California who may have relevant information. *Id.* at 13. The defendants, however, do not specifically identify any of these witnesses. On the other hand, the plaintiffs argue that there are key witnesses spread across the United States and that Texas would be a more central and convenient location for all witnesses. *Plaintiffs' Response to Defendants' Motion to Transfer Venue ("Plaintiffs' Response")* at 2-3. The plaintiffs admit that the parties' witnesses are located in several states, including California, and one witness in Tyler, Texas. *Id.* at 16-18. Notwithstanding the plaintiffs' argument that Texas is a central location for this litigation, almost all of the witnesses outside of California will be inconvenienced regardless of whether the case is transferred to

4

California or remains in Texas.  There is only one potential witness in Texas who would be inconvenienced if this case were transferred to California.  For those witnesses located in California, it would be more convenient for this case to be transferred to California.  In the Court's view, the convenience of the witnesses weighs slightly in favor of transfer.

    3.    <u>The Place of the Alleged Wrong</u>

    The defendants have shown through affidavit, and the plaintiffs do not dispute, that the Liberty Cycler has not been sold, offered for sale, or made publicly available anywhere in the world.  *Defendants' Motion* at 3.  The defendants also assert that the Liberty Cycler has never been shipped into or out of Texas, nor has it been manufactured in Texas, and that all research and development has taken place in California.  *Id.* at 3-4.  On the other hand, the plaintiffs argue that Fresenius intends to distribute the Liberty Cycler in the near future.  *Plaintiffs' Response* at 8.  The plaintiffs, however, do not dispute that the majority of activities related to the Liberty Cycler have taken place in California.  Moreover, even though the defendants operate dialysis clinics in this district, the present claims do not arise from the operation of those clinics, for the simple reason that the accused devices have never been sold or used in Texas.  Accordingly, this factor weighs in favor of transfer.

    4.    <u>The Cost of Obtaining the Attendance of Witnesses and the Availability of Compulsory Process</u>

    The parties have identified witnesses located across the country.  There will also be party witnesses and expert witnesses located across the country who will be required to travel regardless of whether the case is in California or in Texas.  Therefore, the cost of obtaining the attendance of witnesses is neutral as to transfer.

    There is only one witness identified by the parties that would be subject to the compulsory

process in Texas.  The witnesses from California would not be subject to the compulsory process in Texas, but would be subject to the compulsory process in California.  However, there are also witnesses located across the country that would not be subject to the compulsory process in either California or Texas.  In the Court's view, the availability of compulsory process is neutral as to transfer.

     5.    The Availability and Location of Sources of Proof

The sources of proof for all the parties are located in several different states.  They can easily be sent to either Texas or California.  The Court finds that this factor is neutral as to transfer.

     6.    The Possibility of Delay and Prejudice if Transfer is Granted

The Fifth Circuit has suggested that this factor may be relevant in a transfer analysis "only in rare and special circumstances and when such circumstances are established by clear and convincing evidence." *Shoemake*, 233 F. Supp. 2d at 834 (citing *In re Horseshoe Entm't*, 305 F.3d 354, 358 (5th Cir. 2002)).  This is not a rare and exceptional case; therefore, this factor is neutral.

    **B.**    **Public Interest Factors**

     1.    The Administrative Difficulties Caused by Court Congestion

The parties do not address this factor.  Therefore, this factor is neutral as to transfer.

     2.    The Local Interest in Adjudicating Local Disputes

The Liberty Cycler was mainly developed, manufactured and tested in California.  No activities, other than the possibility of future distribution, related to the Liberty Cycler are alleged in Texas.  Accordingly, the Court finds that this factor weighs in favor of transfer.

     3.    The Unfairness of Burdening Citizens in an Unrelated Forum with Jury Duty

The plaintiffs allege that the Liberty Cycler infringes its patent.  None of the infringing

6



activity, however, occurred in Texas.  Although the defendants have facilities in the Eastern District of Texas, the activities related to the Liberty Cycler took place in California.  The Court finds that this factor weighs in favor of transfer.

4.    The avoidance of unnecessary problems in conflict of laws

Patent claims are governed by federal law.  This Court and the Court in the Northern District of California are both capable of applying patent law to infringement claims.  Therefore, this factor is neutral as to transfer.

**III.    Conclusion**

The defendants have satisfied their burden of showing that the balance of convenience and justice substantially weighs in favor of transfer in this case.  Accordingly, Defendants' Motion to Transfer Venue is GRANTED, and this case is hereby transferred to the Northern District of California.

SIGNED this  6th  day of February, 2007.

T. JOHN WARD
UNITED STATES DISTRICT JUDGE

EXHIBIT A, PAGE 91

# Exhibit D

1  KIRKLAND & ELLIS LLP                    FISH & RICHARDSON P.C.
2  David K. Callahan, P.C. (IL 620227)     Juanita R. Brooks (SBN 75934)
   300 North LaSalle Street                12390 El Camino Real
3  Chicago, Illinois 60654                 San Diego, CA 92130
   Telephone: 312-862-2000                 Telephone: (858) 678-5070
4  Facsimile: 312-862-2200                 Facsimile: (858) 678-5099

5  *Attorney For Plaintiffs and Counter-defendants*    *Attorney for Defendants and Counter-claimants FRESENIUS MEDICAL CARE HOLDINGS, INC. AND FRESENIUS USA, INC.*
   *BAXTER HEALTHCARE CORPORATION,*
6  *BAXTER INTERNATIONAL INC., and BAXTER*
7  *HEALTHCARE SA*

8  THE TOOHEY LAW GROUP LLC
   Maureen K. Toohey (SBN 196401)
9  One Financial Center, 15th Floor
   Boston, Massachusetts 02111
10 Telephone: 617-748-5511
11 Facsimile: 617-748-5555

12 *Attorney for Plaintiff and Counter-defendant*
   *DEKA PRODUCTS LIMITED PARTNERSHIP*
13

14              **UNITED STATES DISTRICT COURT**
                **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
15                        **OAKLAND DIVISION**

16
17 BAXTER HEALTHCARE CORPORATION,          Case No. C 07-01359 PJH (JL)
   BAXTER INTERNATIONAL INC., BAXTER
   HEALTHCARE SA, and DEKA PRODUCTS
18 LIMITED PARTNERSHIP,

19        *Plaintiffs and Counter-defendants,*    **JOINT PRETRIAL STATEMENT**

20              vs.

21 FRESENIUS MEDICAL CARE HOLDINGS,        **Pretrial Conf. Date: May 27, 2010**
   INC., d/b/a FRESENIUS MEDICAL CARE      **Time:    2:30 p.m.**
22 NORTH AMERICA, and FRESENIUS USA,       **Place: Courtroom 3, 3rd Floor**
   INC.,                                   **Judge: Hon. Phyllis J. Hamilton**
23
        *Defendants and Counter-claimants.*
24
25
26
27
28

1   infringed by Fresenius.  Fresenius also seeks an award of reasonable attorney fees and costs

2   under, but not limited to, 28 U.S.C. §285, and any further relief that the Court deems just and

3   proper.

III.   STATEMENT OF ALL RELEVANT UNDISPUTED FACTS TO WHICH THE
       PARTIES WILL STIPULATE FOR INCORPORATION INTO THE TRIAL
       RECORD WITHOUT THE NECESSITY OF SUPPORTING TESTIMONY OR
       EXHIBITS

7       1.      Baxter Healthcare Corporation is a Delaware corporation with its principal place

8   of business in Deerfield, Illinois.

9       2.      Baxter International Inc. is a Delaware corporation with its principal place of

10  business in Deerfield, Illinois.

11      3.      Baxter Healthcare SA is a Switzerland corporation with its principal place of

12  business in Wallisellen, Switzerland.

13      4.      Baxter Healthcare Corporation, Baxter International Inc., and Baxter Healthcare

14  SA are providers of dialysis-related products including products for peritoneal dialysis.

15      5.      DEKA is a New Hampshire limited partnership, with its principal place of

16  business in Manchester, New Hampshire.

17      6.      Fresenius Medical Care Holdings d/b/a Fresenius Medical Care North America is

18  a New York corporation with its principal place of business in Waltham, Massachusetts.

19      7.      Fresenius USA, Inc. is a Massachusetts corporation with its principal place of

20  business in Walnut Creek, California.

21      8.      Fresenius Medical Care Holdings and Fresenius USA, Inc. are providers of

22  dialysis-related products and services, including peritoneal dialysis products and therapy, and

23  operate dialysis clinics across the United States.

24      9.      On June 6, 1995, the United States Patent and Trademark Office ("USPTO")

25  issued the '823 Patent, entitled "Peritoneal Dialysis Methods that Emulate Gravity Flow,"

26  naming Dean Kamen and Geoffrey P. Spencer as inventors.

27

28

JOINT PRETRIAL STATEMENT                        3                        Case No. 07-01359 PJH(JL)

Respectfully submitted,

1

January 29, 2010

2

By: /s/ David K. Callahan /s/____

3

KIRKLAND & ELLIS LLP

4
David K. Callahan, P.C. (IL 620227)
Garret Leach (*pro hac vice*)

5
Mary Zaug (*pro hac vice*)
300 North LaSalle Street

6
Chicago, Illinois 60654
Telephone: 312-862-2000

7
Facsimile: 312-862-2200

8

Robert G. Krupka (SBN 196625)

9
777 South Figueroa Street
Los Angeles, California 90017

10
Telephone: 213-680-8400
Facsimile: 213-680-8500

11

Russell Tonkovich (SBN 233280)

12
555 California Street
San Francisco, California, 94104

13
Telephone: 415-439-1400
Facsimile: 415-439-1500

14

*Attorneys for Plaintiffs and Counter-defendants*

15
*BAXTER HEALTHCARE CORPORATION,*

16
*BAXTER INTERNATIONAL INC., and*
*BAXTER HEALTHCARE SA*

17

January 29, 2010

18

By: /s/ Maureen K. Toohey /s/_____

19
THE TOOHEY LAW GROUP LLC

20
Maureen K. Toohey (SBN 196401)
One Financial Center, 15th Floor

21
Boston, Massachusetts 02111
Telephone: (617) 748-5511

22

COBLENTZ, PATCH, DUFFY & BASS LLP

23
Howard A. Slavitt (SBN 172840)
Zuzana Ikels (SBN 208671)

24
One Ferry Building, Suite 200
San Francisco, California 94111-4213

25
Telephone: (415) 391-4800
Facsimile: (415) 989-1663

26

27
*Attorneys for Plaintiff and Counter-defendant*
*DEKA PRODUCTS LIMITED PARTNERSHIP*

28

January 29, 2010

By: /s/ Michael E. Florey /s/_____

FISH & RICHARDSON P.C.
Juanita R. Brooks (SBN 75934)
Todd G. Miller (SBN 163200)
Michael M. Rosen (SBN 230964)
12390 El Camino Real
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Mathias W. Samuel (*pro hac vice*)
Michael E. Florey (*pro hac vice*)
60 South Sixth Street, Suite 3300
Minneapolis, MN 55402
Telephone: (612) 335-5070
Facsimile: (612) 288-9696

Limin Zheng (SBN 226875)
500 Arguello Street, Suite 400
Redwood City, CA 94053
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

*Attorneys for Defendants and Counter-
claimants FRESENIUS MEDICAL CARE
HOLDINGS, INC. AND FRESENIUS USA,
INC.*

---

JOINT PRETRIAL STATEMENT       24       Case No. 07-01359 PJH(JL)

## ELECTRONIC FILING DECLARATION

I, David K. Callahan, declare as follows:

I am a partner at Kirkland & Ellis LLP, and I am Baxter Healthcare Corporation's, Baxter International Inc.'s, and Baxter Healthcare SA's legal counsel in the above-captioned litigation.

Pursuant to the Northern District of California Electronic Filing Procedures and General Order No. 45, I attest that Michael E. Florey, counsel for Defendants, Fresenius Medical Care Holdings, Inc., d/b/a Fresenius Medical Care North America, and Fresenius USA, Inc., (collectively "Fresenius"), and Maureen K. Toohey, counsel for Plaintiff DEKA Products Limited Partnership, concur in the filing of this document and have granted me permission to electronically file this document absent their actual signatures.

Dated: January 29, 2010

Respectfully submitted,

Kirkland & Ellis LLP

By: /s/ David K. Callahan /s/
_____
David K. Callahan, P.C. (IL 620227),
dcallahan@kirkland.com

*Attorney For Plaintiffs and Counter-defendants*
*BAXTER HEALTHCARE CORPORATION,*
*BAXTER INTERNATIONAL INC., and*
*BAXTER HEALTHCARE SA*

EXHIBIT A, PAGE 96

# Exhibit E

9610053
B206575

UNITED STATES OF AMERICA
BEFORE FEDERAL TRADE COMMISSION

```
                              )
    In the Matter of          )
                              )
FRESENIUS AG                   )
                              )
    a corporation; and         )        DOCKET NO. C-3689
                              )
FRESENIUS USA, INC.            )
                              )
    a corporation.             )
                              )
```

## COMPLAINT

Pursuant to the provisions of the Federal Trade Commission Act and of the Clayton Act, and by virtue of the authority vested in it by said Acts, the Federal Trade Commission, having reason to believe that Fresenius AG, the parent company of Fresenius USA, Inc. (collectively "Fresenius"), has entered into an Agreement and Plan of Reorganization with W.R. Grace & Co. ("Grace") whereby Fresenius will acquire from Grace the businesses comprising National Medical Care, Inc. ("NMC"), and that such acquisition, if consummated, would violate Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18, and Section 5 of the Federal Trade Commission Act, as amended, 15 U.S.C. § 45, and having reason to believe that Fresenius has entered into such agreement in restraint of trade in violation of Section 5 of the Federal Trade Commission Act, and it appearing to the Commission that a proceeding in respect thereof would be in the public interest, hereby issues its complaint stating its charges as follows:

## I.   THE RESPONDENTS

1.   Respondent Fresenius AG is a corporation organized, existing and doing business under and by virtue of the laws of Germany with its office and principal place of business located at Borkenberg 14, 61440 Oberursel/Ts, Bad Homburg, Germany.



3.   At all times relevant herein, the Respondents (collectively "Fresenius") have been, and are now, engaged in commerce as "commerce" is defined in Section 4 of the Federal Trade Commission Act (15 U.S.C. § 44) and Section 1 of the Clayton Act (15 U.S.C. § 12), and are corporations whose business is in or affecting commerce as defined in Section 4 of the Federal Trade Commission Act (15 U.S.C. § 44).

## II.   THE PROPOSED ACQUISITION

4.   On or about February 24, 1996, Fresenius and Grace executed an Agreement and Plan of Reorganization in which Fresenius would acquire the assets and businesses comprising Grace's NMC subsidiary.

5.   Fresenius and NMC are substantial direct competitors in the United States market for hemodialysis concentrate.

## III.   THE RELEVANT LINE OF COMMERCE

6.   One relevant line of commerce within which to analyze the effects of the acquisition is the United States market for hemodialysis concentrate.  Hemodialysis concentrate is a bicarbonate solution used in hemodialysis treatment of End Stage Renal Disease to carry waste materials from the patient's blood during the treatment.

7.   Hemodialysis concentrate is a necessary product for hemodialysis treatment with no available substitute.  The cost of the hemodialysis concentrate accounts for a small portion of the cost of hemodialysis treatment.

8.   Imports of hemodialysis concentrate into the United States are rare.  The potential for significant imports is constrained by the fact that most concentrate is shipped in an aqueous solution, making shipping costs very high relative to the value of the product.

9.   Total sales of hemodialysis concentrate in the United States are approximately $50 million.

2

## IV. MARKET CONCENTRATION

10.  Fresenius and NMC are two of a small number of producers of hemodialysis concentrate in the United States.  NMC is the leading producer.  The other producers include CGH Medical, Minn-Tech Corporation, Rockwell Medical and Dana Laboratories.  After the acquisition, Fresenius would have a market share of hemodialysis concentrate sales of over 50 percent in the United States.

11.  The United States market for hemodialysis concentrate is highly concentrated as measured by the Herfindahl-Hirschman Index (HHI).  On the basis of capacity, the proposed acquisition would increase concentration, as measured by the HHI, by over 1250 points, to over 3100.  On the basis of sales, the proposed acquisition would increase concentration, as measured by the HHI, by over 950 points, to over 3000.

## V. CONDITIONS OF ENTRY

12.  Entry into the hemodialysis concentrate market would not be likely to deter or offset reductions in competition resulting from the acquisition.

13.  In addition to obtaining FDA approval, a new entrant would need to obtain a relatively high volume of sales in order to have cost-competitive production, and to support the costs of product testing.  The need to capture a large market share makes the success of new entry less likely, and acts as a deterrent to entry.  Most of the investment in production would likely be sunk in the event that entry were unsuccessful.

14.  The likelihood of new entry is also reduced by the fact that a significant proportion of the dialysis clinics that use hemodialysis concentrate, including NMC, also produce the concentrate, and therefore are unlikely to purchase from a new entrant.  Vertically integrated firms account for approximately a third of patients receiving hemodialysis treatment.

15.  Moreover, a new entrant into hemodialysis concentrate would need to have an effective distribution system.  However, there are only a few large full-line distributors of hemodialysis products, the largest of which (Fresenius, NMC, and CGH Medical) already produce hemodialysis concentrate.

## VI. EFFECTS OF THE ACQUISITION

3



16.   The acquisition of NMC by Fresenius may substantially lessen competition in the United States market for hemodialysis concentrate because, among other things:

a.   it will eliminate substantial head-to-head competition between NMC and Fresenius;

b.   it will increase concentration substantially in a highly concentrated market;

c.   it will increase the likelihood of coordinated interaction among producers of hemodialysis concentrate;

d.   company documents project that the increased "consolidation" of suppliers will likely lead to "price stabilization;" and

e.   it will likely result in increased prices for hemodialysis concentrate.

## VII. VIOLATIONS CHARGED

17.   The acquisition agreement between Fresenius and NMC described in paragraph 4 violates Section 5 of the Federal Trade Commission Act, as amended, 15 U.S.C. § 45.

18.   The proposed acquisition of NMC by Fresenius would, if consummated, violate Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18, and Section 5 of the Federal Trade Commission Act, as amended, 15 U.S.C. § 45.

WHEREFORE, THE PREMISES CONSIDERED, the Federal Trade Commission on this fifteenth day of October, 1996, issues its complaint against said respondents.

By the Commission, Commissioner Starek dissenting.

Seal

Donald S. Clark
Secretary

4

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Lowell W. Finson (CA Bar No. 275586)<br>PHILLIPS LAW FIRM<br>2101 Rosecrans Avenue, Suite 3290<br>Los Angeles, CA 90245<br>TELEPHONE NO.: (877) 480-9142   FAX NO.: (213) 330-0298<br>ATTORNEY FOR *(Name):* Plaintiffs GEORGE KAPULE ENTENDENCIA, et al. | **FILED**<br>Superior Court of California<br>County of Los Angeles<br><br>JAN 0 9 2014<br><br>Sherri R. Carter, Executive Officer/Clerk<br>By_____ Deputy<br>Shaunya Bolden |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Stanley Mosk Courthous

CASE NAME: NCIA
GEORGE KAPULE ENTENDE, et al. v. FRESENIUS USA, INC., et al

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: BC532644 |
|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter  ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br><br>DEPT: |

BY FAX

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☑ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☑ is ☐ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☑ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary  b. ☑ nonmonetary; declaratory or injunctive relief  c. ☑ punitive
4. Number of causes of action *(specify):* 11
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: January 9, 2014
Lowell W. Finson
(TYPE OR PRINT NAME)                        (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov
American LegalNet, Inc.
www.FormsWorkflow.com

EXHIBIT A, PAGE 102

 

BY FAX

| SHORT TITLE: | CASE NUMBER |
|---|---|
| EORGE KAPULE ENTENDENCIA, et al. v. FRESENIUS USA, INC., et al | |

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to LASC Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

Item I. Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES   CLASS ACTION? ☐ YES   LIMITED CASE? ☐ YES   TIME ESTIMATED FOR TRIAL 7_____ ☐ HOURS/ ☑ DAYS

Item II. Select the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet Form, find the main civil case cover sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Los Angeles Superior Court Local Rule 2.0.

### Applicable Reasons for Choosing Courthouse Location (see Column C below)

1. Class Actions must be filed in the County Courthouse, Central District.
2. May be filed in Central (Other county, or no Bodily Injury/Property Damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet Category No. | Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 2. |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☑ A7260  Product Liability (not asbestos or toxic/environmental) | 1., (2.) 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1., 2., 4. |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1., 2., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1., 2., 4. |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 2., 4. |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1., 2., 3. |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 2., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |

LACIV 109  (Rev. 01/07)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 1 of 4

EXHIBIT A, PAGE 103

GEORGE KAPULE ENTENDENCIA

| SHORT TITLE: |  | CASE NUMBER |
|---|---|---|
|  | , et al. v. FRESENIUS USA, INC., et al |  |

| | A<br>Civil Case Cover<br>Sheet Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons<br>-See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/Property Damage/ Wrongful Death Tort (Cont'd.)** | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | .2., 3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109  Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not Unlawful Detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ A6012  Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1., 2., 3., 5. |
| | | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation      Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032  Quiet Title | 2., 6. |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer- Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer- Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer- Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 8. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

EXHIBIT A, PAGE 104

| SHORT TITLE GEORGE KAPULE ENTENDENCIA , et al. v. FRESENIUS USA, INC., et al | | CASE NUMBER |
| --- | --- | --- |

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
| --- | --- | --- | --- |
| **Judicial Review (Cont'd.)** | Writ of Mandate<br><br>(02) | ☐ A6151   Writ - Administrative Mandamus<br>☐ A6152   Writ - Mandamus on Limited Court Case Matter<br>☐ A6153   Writ - Other Limited Court Case Review | 2., 8.<br>2.<br>2. |
| | Other Judicial Review<br>(39) | ☐ A6150   Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003   Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007   Construction defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006   Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035   Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort Environmental (30) | ☐ A6036   Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014   Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement<br>of Judgment<br><br>(20) | ☐ A6141   Sister State Judgment<br>☐ A6160   Abstract of Judgment<br>☐ A6107   Confession of Judgment (non-domestic relations)<br>☐ A6140   Administrative Agency Award (not unpaid taxes)<br>☐ A6114   Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112   Other Enforcement of Judgment Case | 2., 9.<br>2., 6.<br>2., 9.<br>2., 8.<br>2., 8.<br>2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033   Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints<br>(Not Specified Above)<br><br>(42) | ☐ A6030   Declaratory Relief Only<br>☐ A6040   Injunctive Relief Only (not domestic/harassment)<br>☐ A6011   Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000   Other Civil Complaint (non-tort/non-complex) | 1., 2., 8.<br>2., 8.<br>1., 2., 8.<br>1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance(21) | ☐ A6113   Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions<br>(Not Specified Above)<br><br>(43) | ☐ A6121   Civil Harassment<br>☐ A6123   Workplace Harassment<br>☐ A6124   Elder/Dependent Adult Abuse Case<br>☐ A6190   Election Contest<br>☐ A6110   Petition for Change of Name<br>☐ A6170   Petition for Relief from Late Claim Law<br>☐ A6100   Other Civil Petition | 2., 3., 9.<br>2., 3., 9.<br>2., 3., 9.<br>2.<br>2., 7.<br>2., 3., 4., 8.<br>2., 9. |

LACIV 109 (Rev. 01/07)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 3 of 4

EXHIBIT A, PAGE 105

GEORGE KNOWLE: ENTENDENCIA
, et al. v. FRESENIUS USA, INC., et al

| | CASE NUMBER |
|---|---|
| | |

Item III. *Statement of Location:* Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| REASON: CHECK THE NUMBER UNDER COLUMN C WHICH APPLIES IN THIS CASE | ADDRESS: 433 North Camden Drive. #700 |
|---|---|
| ☐1. ☑2. ☐3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | |

| CITY: BEVERLY HILLS | STATE: CA | ZIP CODE: 90210 | |
|---|---|---|---|

Item IV. *Declaration of Assignment:* I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the <u>Stanley Mosk Cour</u> courthouse in the <u>Central District</u> District of the Los Angeles Superior Court (Code Civ. Proc., § 392 et seq., and LASC Local Rule 2.0, subds. (b), (c) and (d)).

Dated: <u>January 9, 2014</u>

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

---

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet form CM-010.

4. Complete Addendum to Civil Case Cover Sheet form LACIV 109 (Rev. 01/07), LASC Approved 03-04.

5. Payment in full of the filing fee, unless fees have been waived.

6. Signed order appointing the Guardian ad Litem, JC form FL-935, if the plaintiff or petitioner is a minor under 18 years of age, or if required by Court.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LACIV 109 (Rev. 01/07)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 4 of 4

EXHIBIT A, PAGE 106



**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

| | |
|---|---|
| **NOTICE TO DEFENDANT:**<br>*(AVISO AL DEMANDADO):*<br><br>FRESENIUS USA, INC., FRESENIUS USA MANUFACTURING,<br>INC., FRESENIUS MEDICAL CARE HOLDINGS, INC.,  (continued)<br><br>**YOU ARE BEING SUED BY PLAINTIFF:**<br>*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*<br><br>GEORGE KAPULE ENTENDENCIA, WILLIAM SYLVA, and MARC<br>SYLVA, as surviving statutory beneficiaries (continued) | **FOR COURT USE ONLY**<br>*(SOLO PARA USO DE LA CORTE)*<br><br><br>**FILED**<br>Superior Court of California<br>County of Los Angeles<br><br>JAN 0 9 2014<br><br>Sherri R. Carter, Executive Officer/Clerk<br>By _____, Deputy<br>Shaunya Bolden |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Superior Court of Los Angeles<br>111 N Hill St, Los Angeles, CA 90012 | **CASE NUMBER:**<br>*(Número del Caso):*<br><br>B C 5 3 2 6 4 4 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
PHILLIPS LAW FIRM 1101 W. Finson 2101 Rosecrans Ave Suite 3290 El Segundo, CA 90245

| | | | |
|---|---|---|---|
| DATE: January 9, 2014<br>*(Fecha)* | | Clerk, by _____ SHAUNYA BOLDEN, Deputy<br>*(Secretario)* *(Adjunto)* | |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)   ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

EXHIBIT A, PAGE 107

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| GEORGE KAPULE ENTEND, et al. v. FRESENIUS USA, INC., et al  encia | |

**INSTRUCTIONS FOR USE**

➔ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
➔ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

[✓] Plaintiff      [ ] Defendant      [ ] Cross-Complainant      [ ] Cross-Defendant

for the wrongful death of VIOLET GERTRUDE ENTENDENCIA, deceased, individually and on behalf of all other heirs of decedent ; DAVID MCINTYRE, as surviving statutory beneficiary for the wrongful death of ELIZABETH MCINTYRE, deceased, individually and on behalf of all other heirs of decedent,

Page  2  of  3

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| GEORGE KAPULE ENTEND, et al. v. FRESENIUS USA, INC., et al | |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties
Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

FRESENIUS MEDICAL CARE NORTH AMERICA, INC., FRESENIUS USA MARKETING, INC.,
WALTER L. WEISMAN, BEN LIPPS, JOHN DOES, MEDICAL DIRECTORS, and DOES 1-100
INCLUSIVE

Page __3__ of __3__

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

Lowell W. Finson (CA 275586)
PHILLIPS LAW FIRM
2101 Rosecrans Avenue, Suite 3290
El Segundo, CA 90245
TELEPHONE NO: (877) 480-9142    FAX NO. *(Optional):* (213) 330-0346
E-MAIL ADDRESS *(Optional):* lowell@justiceforyou.com
ATTORNEY FOR *(Name):* Plaintiffs George Entendencia, et al.

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

JAN 14 2014

John A. Clarke, Executive Officer/Clerk
BY _____ Deputy
Glenetta Robinson

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Stanley Mosk Courthouse

PLAINTIFF/PETITIONER: George Entendencia, et al.

DEFENDANT/RESPONDENT: FRESENIUS USA, INC., et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER: BC532644 |
|---|---|

TO *(insert name of party being served):* Fish & Richardson P.C. Attorneys Mr. Ben Lipps

**BY FAX**
*As stipulated*

## NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: 1/13/14

Brandy Torres
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

## ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*
1. [✓] A copy of the summons and of the complaint.
2. [✓] Other *(specify):*
   Summons, Complaint, Civil Cover Sheet, Addendum to Civil Cover Sheet, General Order, Notice of Assignment, Final Status Conference, Voluntary Efficient Litigation Stipulations

*(To be completed by recipient):* 1/13/14

Date this form is signed:

| on behalf of Ben Lipps | |
|---|---|
| (TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY, ON WHOSE BEHALF THIS FORM IS SIGNED) | (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY) |

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Page 1 of 1
Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

EXHIBIT A, PAGE 110

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Lowell W. Finson, 275586<br>Phillips Webster National<br>13303 NE 175th St.<br>Woodinville, WA 98072<br>TELEPHONE NO.: (213) 808-6744<br>ATTORNEY FOR (Name): Plaintiff | **FILED**<br>Superior Court of California<br>County of Los Angeles<br><br>JAN 15 2014<br><br>Sherri R. Carter, Executive Officer/Clerk<br>By _Raul Sanchez_, Deputy<br>Raul Sanchez |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF

Superior Court of California, Los Angeles County
111 N. Hill Street
Los Angeles, CA 90012-3117

PLAINTIFF/PETITIONER: George K. Entendencia, et al

DEFENDANT/RESPONDENT: Fresenius, USA, INC, et al

| PROOF OF SERVICE OF SUMMONS | CASE NUMBER:<br>BC532644 |
|---|---|
| | Ref. No. or File No.:<br>35541   97 |

1. At the time of service I was a citizen of the United States, at least 18 years of age and not a party to this action.

2. I served copies of: Summons, Civil Case Cover Sheet, Civil Case Cover Sheet Addendum and Statement of Location, Complaint, Exhibits, Notice of Case Assignment - Unlimited Civil Case, Amended General Order RE Personal Injury Court Procedures, Amended General Order - Final Status Conference, Personal Injury Courts,

3. a. Party served: FRESENIUS MEDICAL CARE NORTH AMERICA, INC.

   b. Person Served: Sarah Schuler - Assistant General Counsel - Person authorized to accept service of process

4. Address where the party was served: 920 Winter Street
                                           Waltham, MA  02451

5. I served the party
   a. by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) or (date): 1/14/2014     (2) at (time): 1:20 PM

6. The "Notice to the Person Served" (on the summons) was completed as follows:

   c. on behalf of:

**BY FAX**

FRESENIUS MEDICAL CARE NORTH AMERICA, INC.

under: CCP 416.10 (corporation)

7. Person who served papers
   a. Name:        Mike Noble
   b. Address:    One Legal - 194-Marin
                 504 Redwood Blvd #223
                 Novato, CA  94947
   c. Telephone number: 415-491-0606

   d. The fee for service was: $ 52.95
   e. I am:
      (1) Not a registered California process server.

8. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: 1/14/2014

Mike Noble
(NAME OF PERSON WHO SERVED PAPERS)                  (SIGNATURE)

Form Adopted for Mandatory Use
Judicial Council of California POS-010
[Rev. Jan 1, 2007]

PROOF OF SERVICE OF SUMMONS

Code of Civil Procedure, § 417.10

OL# 1771634

EXHIBIT A, PAGE 111

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Lowell W. Finson, 275586<br>Phillips Webster National<br>13303 NE 175th St.<br>Woodinville, WA 98072<br>TELEPHONE NO.: (213) 808-6744<br>ATTORNEY FOR *(Name)*: Plaintiff | **FILED**<br>Superior Court of California<br>County of Los Angeles<br><br>JAN 15 2014<br><br>Sherri R. Carter, Executive Officer/Clerk<br>By _____ Deputy<br>Raul Sanchez |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF |
|---|
| Superior Court of California, Los Angeles County<br>111 N. Hill Street<br>Los Angeles, CA 90012-3117 |

| PLAINTIFF/PETITIONER: George K. Entendencia, et al | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Fresenius, USA, INC, et al | BC532644 |

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.:<br>35541 |
|---|---|

D 97

1. At the time of service I was a citizen of the United States, at least 18 years of age and not a party to this action.

2. I served copies of: Summons, Civil Case Cover Sheet, Civil Case Cover Sheet Addendum and Statement of Location, Complaint, Exhibits, Notice of Case Assignment - Unlimited Civil Case, Amended General Order RE Personal Injury Court Procedures, Amended General Order - Final Status Conference, Personal Injury Courts,

3. a. Party served: FRESENIUS MEDICAL CARE HOLDINGS, INC.

   b. Person Served: Sarah Schuler - Assistant General Counsel - Person authorized to accept service of process

4. Address where the party was served: 920 Winter Street
   Waltham, MA 02451

5. I served the party
   a. by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) or *(date)*: 1/14/2014    (2) at *(time)*: 1:20 PM

6. The "Notice to the Person Served" (on the summons) was completed as follows:

   c. on behalf of:

**BY FAX**

FRESENIUS MEDICAL CARE HOLDINGS, INC.

   under:    CCP 416.10 (corporation)

7. Person who served papers
   a. Name:        Mike Noble
   b. Address:     One Legal - 194-Marin
                   504 Redwood Blvd #223
                   Novato, CA 94947
   c. Telephone number: 415-491-0606

   d. The fee for service was:  $ 164.95
   e. I am:
       (1) Not a registered California process server.

8. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: 1/14/2014

Mike Noble
(NAME OF PERSON WHO SERVED PAPERS)                    (SIGNATURE)

Form Adopted for Mandatory Use
Judicial Council of California POS-010
[Rev. Jan 1, 2007]                    **PROOF OF SERVICE OF SUMMONS**    Code of Civil Procedure, § 417.10

OL# 1771633

EXHIBIT A, PAGE 112

POS-015

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |

Lowell W. Finson (CA 275586)
PHILLIPS LAW FIRM
2101 Rosecrans Avenue, Suite 3290
El Segundo, CA 90245
TELEPHONE NO.: (877) 480-9142      FAX NO. *(Optional):* (213) 330-0346
E-MAIL ADDRESS *(Optional):* lowell@justiceforyou.com
ATTORNEY FOR *(Name):* Plaintiffs George Entendencia, et al.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Stanley Mosk Courthouse

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

JAN 28 2014

John A. Clarke, Executive Officer/Clerk
BY _____ Deputy
Ann-Pate Robinson

PLAINTIFF/PETITIONER: George Entendencia, et al.

DEFENDANT/RESPONDENT: FRESENIUS USA, INC., et al.

| | |
|---|---|
| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER: BC532644 |

TO *(insert name of party being served):* Charles Cumming at Baker, McKenzie Attorneys Mr. Walter L Weisman

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: 1/10/14

Brandy Torres
_____
(TYPE OR PRINT NAME)

► _____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing):*
1. [✓] A copy of the summons and of the complaint.
2. [✓] Other *(specify):*
    Summons, Complaint, Civil Cover Sheet, Addendum to Civil Cover Sheet, General Order, Notice of Assignment, Final Status Conference, ~~Voluntary Efficient Litigation Stipulations~~

*(To be completed by recipient):*

Date this form is signed: 14 Jan 14

► _____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Charles Cumming on behalf of Walter Weisman
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL** | Page 1 of 1<br>Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov |

# EXHIBIT B

Colin H. Murray (State Bar No. 159142)
 colin.murray@bakermckenzie.com
Keith L. Wurster (State Bar No. 198918)
 keith.wurster@bakermckenzie.com
**BAKER & McKENZIE LLP**
Two Embarcadero Center, 11th Floor
San Francisco, CA  94111-3802
Telephone: +1 415 576 3000
Facsimile:  +1 415 576 3099

Attorneys for Defendant
WALTER L. WEISMAN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| AURORA NUNEZ, as surviving statutory beneficiary for the wrongful death of LAZARO NUNEZ, deceased, individually and on behalf of all other heirs of decedent; TAFFIE ALEXANDER, as surviving statutory beneficiary for the wrongful death of JAMES S. BARTON, deceased, individually and on behalf of all other heirs of decedent; CHARLES PASS, as surviving statutory beneficiary for the wrongful death of ELNORA WILLIS PASS, deceased, individually and on behalf of all other heirs of decedent; SHERLYN SIMON, as surviving statutory beneficiary for the wrongful death of NATHANIEL LAMONT SIMON, deceased, individually and on behalf of all other heirs of decedent, | Case No.  CV-13-02729 JGB (OPx)  **DECLARATION OF WALTER L. WEISMAN**  Date:     July 1, 2013 Time:     9:00 AM Place:    Courtroom 1 Judge:   Hon. Jesus G. Bernal |
| Plaintiffs, | |
| v. | |
| FRESENIUS USA, INC.; FRESENIUS USA MANUFACTURING, INC.; FRESENIUS MEDICAL CARE HOLDINGS, INC.; FRESENIUS MEDICAL CARE NORTH AMERICA, INC.; FRESENIUS USA MARKETING, INC.; FRESENIUS MEDICAL CLINIC; WALTER L. WEISMAN; JOHN DOES, MEDICAL DIRECTORS, AND DOES 1-100 INCLUSIVE, | |
| Defendants. | |

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

EXHIBIT B, PAGE 114

Case No. CV-13-02729-JGB (OPx)
DECLARATION OF WALTER L. WEISMAN

I, Walter L. Weisman, declare as follows:

1.      I am not an executive, officer, director, board member, or employee of any of the corporate defendants in this action.  I have no authority with respect to any of the corporate defendants in this action.

2.      I am not an executive, officer, director, board member, or employee of any of the entities defined as "Fresenius" in the Complaint.  I have no authority with respect to any of the entities defined as "Fresenius" in the Complaint.

3.      I never heard of an entity called "Fresenius Medical Care for Los Angeles, California," as alleged in the Complaint.  I am not an executive, officer, director, board member, or employee of any such entity.

4.      I am a member of the Supervisory Board of Fresenius Medical Care AG & Co. KGaA.  I am not the Chairman of that board and never have been.  I do chair the Audit and Corporate Governance Committee of the Supervisory Board.

5.      Fresenius Medical Care AG & Co. KGaA is a partnership limited by shares organized under the laws of Germany with its offices in Germany.

6.      Fresenius Medical Care AG & Co. KGaA is a holding company.  It is not an operating company.  To the best of my knowledge, it does not design, test, manufacture, research, market, advertise, promote, sell, or distribute the products that are the subject of the Compliant, NaturaLyte or GranuFlo.

7.      As a member of the Supervisory Board of Fresenius Medical Care AG & Co. KGaA I have no oversight of the day-to-day affairs and operations of its operating indirect subsidiaries.  I have no direct involvement with any of the subsidiaries in the United States.

8.      I did not hear about the issues now raised in the Complaint with respect to NaturaLyte or GranuFlo, or even hear about the existence of the products NaturaLyte or GranuFlo, until after those issues became public knowledge in June of 2012.

9.      I am not a medical doctor.  I am a businessman and have made my career

1

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

EXHIBIT B, PAGE 115

Case No. CV-13-02729-JGB (OPx)
DECLARATION OF WALTER L. WEISMAN

1  as a business executive. I have a Juris Doctor degree from Stanford Law School. In

2  German practice it is considered prestigious to have a doctorate in law and lawyers

3  with such a doctorate are referred to with the honorific "Dr." before their names. The

4  formal publications Fresenius Medical Care AG & Co. KGaA, which are based on

5  German practice, refer to lawyers on the Supervisory Board with the title "Dr."

6      10.    I was Chairman and Chief Executive Officer of American Medical

7  International until my retirement in 1998. To the best of my knowledge, American

8  Medical International has nothing whatsoever to do with any of the other parties or the

9  events involved in this lawsuit.

10      I declare under penalty of perjury under the laws of the United States of

11  America that the foregoing is true and correct.

12  Executed on June 17, 2013.

13

14                                              _____

15                                              WALTER L. WEISMAN

16

17

18

19

20

21

22

23

24

25

26

27

28

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

2

Case No. CV-13-02729-JGB (OPx)
DECLARATION OF WALTER L. WEISMAN

# EXHIBIT C

1   Juanita R. Brooks (SBN 75934)
    brooks@fr.com
2   Roger A. Denning (SBN 228998)
    denning@fr.com
3   Olga I. May (SBN 232012)
    omay@fr.com
4   FISH & RICHARDSON P.C.
    12390 El Camino Real
5   San Diego, CA 92130-2081
    Telephone: (858) 678-5070
6   Facsimile: (858) 678-5099

7   Tamara Fraizer (SBN 215942)
    Fraizer@fr.com
8   FISH & RICHARDSON P.C.
    500 Arguello Street
9   Suite 500
    Redwood City, CA 94063
10  Telephone: (650) 839-5070
    Facsimile: (650) 839-5071

11
    Attorneys for Defendants FRESENIUS USA, INC., FRESENIUS USA MANUFACTURING,
12  INC., FRESENIUS MEDICAL CARE HOLDINGS, INC., FRESENIUS MEDICAL CARE
    NORTH AMERICA, INC., FRESENIUS USA MARKETING, INC., and BEN LIPPS
13

14                  SUPERIOR COURT OF THE STATE OF CALIFORNIA

15                         COUNTY OF LOS ANGELES

16
    GEORGE KAPULE ENTENDENCIA,              Case No. BC532644
17  WILLIAM SYLVA, and MARC SYLVA, as
    surviving statutory beneficiaries for the wrongful
18  death of VIOLET GERTRUDE                **FRESENIUS DEFENDANTS' AND BEN
    ENTENDENCIA, deceased, individually and on   LIPPS' NOTICE OF FILING OF NOTICE
19  behalf of all other heirs of decedent; DAVID   OF REMOVAL**
    MCINTYRE, as surviving statutory beneficiary
20  for the wrongful death of ELIZABETH
    MCINTYRE, deceased, individually and on
21  behalf of all other heirs of decedent,

22
                        Plaintiffs,
23
    v.
24
    FRESENIUS USA, INC., FRESENIUS USA
25  MANUFACTURING, INC., FRESENIUS
    MEDICAL CARE HOLDINGS, INC.,
26  FRESENIUS MEDICAL CARE NORTH
    AMERICA, INC., FRESENIUS USA
27  MARKETING, INC., WALTER L. WEISMAN,
    BEN LIPPS, JOHN DOES, MEDICAL
28

                                    1

1  DIRECTORS, and DOES 1-100 INCLUSIVE

2              Defendants.

3        TO THE CLERK OF THE ABOVE ENTITLED COURT, AND TO ALL PARTIES AND

4  THEIR ATTORNEYS OF RECORD:

5        PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1332, 1367, 1441 AND 1446, on

6  February 10, 2014, Defendants Fresenius USA, Inc., Fresenius Medical Care Holdings, Inc.,

7  Fresenius USA Marketing, Inc., and Fresenius USA Manufacturing, Inc. (collectively "the

8  Fresenius Defendants")[1], and Ben Lipps filed their Notice of Removal of this action under 28

9  U.S.C. § 1441(b) (Diversity Jurisdiction) with the United States District Court for the Central

10  District of California, Western Division.  Copies of said Notice and its accompanying exhibits are

11  attached hereto as Exhibit "1."

12        PLEASE TAKE FURTHER NOTICE that the filing of said Notice of Removal in federal

13  court, together with the filing of a copy of that Notice with this Court, effects the removal of this

14  action in accordance with 28 U.S.C. § 1441(d).  This Court need take no further action with respect

15  to this case unless and until the case is remanded.

16

17  Dated:  February 10, 2014            Respectfully submitted,

18

19  By: _____

20  Tamara Fraizer (SBN 215942)
    FISH & RICHARDSON P.C.

21  500 Arguello Street, Suite 500
    Redwood City, CA 94063

22  Attorney for Defendants: FRESENIUS USA,

23  INC., FRESENIUS USA MANUFACTURING,
    INC., FRESENIUS MEDICAL CARE

24  HOLDINGS, INC., FRESENIUS MEDICAL
    CARE NORTH AMERICA, INC., FRESENIUS

25  USA MARKETING, INC., and BEN LIPPS

26  _____

27      [1] The Complaint also names "Fresenius Medical Care North America, Inc." as a defendant.
"Fresenius Medical Care North America, Inc." is not a legal entity, but instead is a d/b/a for

28  Fresenius Medical Care Holdings, Inc.  Fresenius USA Sales, Inc., named in the body of the
Complaint but not the caption, was dissolved in March 2010.

1

## PROOF OF SERVICE

2

   I am employed in the County of San Mateo. My business address is Fish & Richardson P.C., 500 Arguello Street, Suite 500, Redwood City, CA 94063.  I am over the age of 18 and not a party to the foregoing action.

3

4

   I am readily familiar with the business practice at my place of business for collection and processing of correspondence for personal delivery, for mailing with United States Postal Service, for facsimile, and for overnight delivery by Federal Express, Express Mail, or other overnight service.

5

6

   On February 10, 2014, I served a copy of the foregoing document(s) on the interested parties in this action by placing a true and correct copy thereof, enclosed in a sealed envelope, and addressed as follows:

7

8

## **Counsel for Plaintiff:**

9

10

Lowell W. Finson (CA Bar No 275586)
PHILLIPS LAW FIRM
2101 Rosecrans Avenue, Suite 3290
EI Segundo, CA 90245
Tel: (877)480-9142
Fax: (213)330-0346
lowell@justiceforyou.com

Scott M. Hendler (TX Bar No 09445500)
Sean Lyons (TX Bar No 00792280)
HENDLER LAW, PC
Park Terrace
1301 W. 25th Street, Suite 400
Austin, TX 78705
Telephone: (512) 439-3200
shendler@hendlerlaw.com
slyons@henderlaw.com

11

12

13

14

15

16

J. Paul Sizemore, (CA Bar No 254981)
Jaime E. Moss, (CA Bar No 285761)
SIZEMORE LAW FIRM, PLC.
2101 Rosecrans Avenue, Suite 3290
EI Segundo, CA 90245
Tel: (310) 322-8800
Fax: (310) 322-8811
paul@sizemorelawfirm.com
moss@sizemorelawfirm.com

Michael J. Brickman (SC Bar No 000874)
Kimberly Keevers Palmer (SC Bar No 66496)
Nina Fields Britt (SC Bar No 68294)
RICHARDSON, PATRICK, WESTBROOK & BRICKMAN, LLC
1017 Chuck Dawley Boulevard
Post Office Box 1007
Mt. Pleasant, SC 29464
Telephone: (843) 727-6500
mbricman@rpwb.com
kkeevers@rpwb.com
nfields@rpwb.com

17

18

19

20

21

22

23

☐ **MAIL:**     Such correspondence was deposited, postage fully paid, with the United States Postal Service on the same day in the ordinary course of business.

24

25

☐ **PERSONAL:**     Such envelope was delivered by hand to the offices of the addressee.

26

27

28

3

EXHIBIT C, PAGE 119

| | | |
|---|---|---|
| ☐ | **FACSIMILE:** | Such document was faxed to the facsimile transmission machine with the facsimile machine number stated above.  Upon completion of the transmission, the transmitting machine issued a transmission report showing the transmission was complete and without error. |
| ☐ | **E-MAIL:** | Such document was transmitted by electronic mail to the addressees' email addresses as stated above. |
| ☒ XX | **FEDERAL EXPRESS:** | Such correspondence was deposited on the same day in the ordinary course of business with a facility regularly maintained by Federal Express. |
| ☐ | **EXPRESS MAIL:** | Such correspondence was deposited on the same day in the ordinary course of business with a facility regularly maintained by the United States Postal Service. |
| ☐ | **OVERNIGHT DELIVERY:** | Such correspondence was given on the same day in the ordinary course of business to an authorized courier or a driver authorized by that courier to receive documents. |

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

I declare under penalty of perjury that the above is true and correct.  Executed on February 10, 2014, at Redwood City, California.

_____
Cecilia Acosta

# EXHIBIT D



COPY

1   Juanita R. Brooks (SBN 75934)
    brooks@fr.com
2   Roger A. Denning (SBN 228998)
    denning@fr.com
3   Olga I. May (SBN 232012)
    omay@fr.com
4
    FISH & RICHARDSON P.C.
5   12390 El Camino Real
    San Diego, CA 92130
6   Telephone: (858) 678-5070
7   Facsimile:  (858) 678-5099
8
9   Attorneys for Defendants FRESENIUS USA, INC., FRESENIUS USA
    MANUFACTURING, INC., FRESENIUS MEDICAL CARE HOLDINGS, INC.,
10  FRESENIUS MEDICAL CARE NORTH AMERICA, INC., FRESENIUS USA
11  MARKETING, INC., and BEN LIPPS

12                 UNITED STATES DISTRICT COURT

13                CENTRAL DISTRICT OF CALIFORNIA

14
    KIMBERLY JOHNSON, SHALA          Case No. CV13-06245-MRP
15  JOHNSON, HOLLIS JOHNSON,                          (VBKx)
    NIESHA JOHNSON, DIESHA
16  JOHNSON, BRYAN BROWN, AND        DECLARATION OF BEN J. LIPPS
17  ANNTONI ANDERSON, a minor, by
    and through her guardian ad litem,
18  KIMBERLY JOHNSON,
19
                   Plaintiffs,
20
    v.
21
    FRESENIUS USA, INC., FRESENIUS
22  USA MANUFACTURING, INC.,
    FRESENIUS MEDICAL CARE
23  HOLDINGS, INC., FRESENIUS
24  MEDICAL CARE NORTH AMERICA,
    INC., FRESENIUS USA MARKETING,
25  INC., WALTER L. WEISMAN, BEN
26  LIPPS, and DOES 1-100 INCLUSIVE,
27
                   Defendants.
28

EXHIBIT D, PAGE 121

I, Ben J. Lipps, declare and state as follows:

1.     I am over the age of eighteen, have personal knowledge of the facts contained herein, and if called to testify thereon could competently do so.

2.     From October 1996 through June 2013, for over fifteen years, my family and I resided in the Commonwealth of Massachusetts, and I considered Massachusetts to be my state of residence.  During this time, I owned several personal residences in the Boston area, where my wife and I lived and maintained our personal property.  During that time, I was registered to vote only in Massachusetts, and I always cast my vote in Massachusetts.  My only automobile driver's license was issued by Massachusetts, and my car was registered there.  I paid taxes to the Commonwealth of Massachusetts.

3.     From1999 through 2012, I was the Chief Executive Officer and Chairman of the Management Board of Fresenius Medical Care AG and Co KGaA, a German business organization with headquarters in Bad Homburg, Germany.  Fresenius Medical Care AG and Co KGaA has operations and facilities worldwide, and I therefore travelled with great frequency and regularity, but my primary office was in Waltham, Massachusetts.  During that time, I spent more time in my Boston residence and Waltham office than in any other residential or office location.

4.     In July of 2013, I moved to the State of Nevada.  I currently own a home in Incline Village, Nevada, where my wife and I live and keep most of our personal property.  I consider Nevada to be my state of residence.

5.     I have established my own business, Lipps & Associates, LLC, which is located at 930 Tahoe Boulevard, Suite 802-545, Incline Village, Nevada 89451.  My current driver's license is issued by Massachusetts, but I will be applying for a Nevada license.  I am currently registered to vote in Massachusetts, but I will be registering to vote in Nevada for the next general election.  I pay taxes to the State of Nevada and Washoe County, Nevada.   My most recent bank account was established with Bank of America in Incline Village, Nevada.

6.      I used to live in California – before I moved to Massachusetts in October of 1996 – but California has not been my state of residence at any point since October of 1996.  California is not my state of residence now, and I do not intend for it to be my state of residence in the future.  At no point in the last 15 years have I been registered to vote in California, been employed by a California company, or held a California driver's license.

7.      My wife and I do jointly own two vacation houses in California – one in Newport Beach and one in Palm Springs – where I spend only limited periods of time when I travel to California for business or pleasure.  I have paid property taxes on these houses, but I have never used either house as a primary residence, and I do not intend for either house to be my primary residence in the future.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on _August 22,_ 2013, in _INCLINE VILLAGE_ , _NEVADA 89451._

_Ben J. Lipps_
Ben J. Lipps

EXHIBIT D, PAGE 123   DECLARATION OF BEN J. LIPPS

# PROOF OF SERVICE

I am employed in the County of San Diego. My business address is Fish & Richardson P.C., 12390 El Camino Real, San Diego, California 92130. I am over the age of 18 and not a party to the foregoing action.

I am readily familiar with the business practice at my place of business for collection and processing of correspondence for personal delivery, for mailing with United States Postal Service, for facsimile, and for overnight delivery by Federal Express, Express Mail, or other overnight service.

On August 26, 2013, I served a copy of the foregoing document(s) on the interested parties in this action by placing a true and correct copy thereof, enclosed in a sealed envelope, and addressed as follows:

**Counsel for Plaintiff:**

Ramon Rossi Lopez
Matthew Ramon Lopez
Brady Douglas Williams
LOPEZ McHUGH LLP
100 Bayview Circle, Suite 5600
Newport Beach, CA 92660
Telephone: (949) 737-1501
Facsimile: (949) 737-1504
rlopez0,1opezmchugh.corn
mlopezglopezmchugll.com
bwilliamsamezmaugh.com

John A. Dalimonte
KARON AND DALIMONTE LLP
85 Devonshire Street
Boston, MA 02109
Telephone: (617) 367-3311
Facsimile: (617) 742-9130
iohndalimonteftdlaw.net

Jeffrey N. Catalano
Nicholas B. Carter
Eric Asquith
TODD & WELD LLP
28 State Street., 31 Floor
Boston, MA 02109
Telephone: (617) 720-2626
Facsimile: (617) 624-4869
jcatalano@toddweld.com
ncarter(atoddweld.com
easquith@toddweld.com

| | **MAIL:** | Such correspondence was deposited, postage fully paid, with the United States Postal Service on the same day in the ordinary course of business. |

| | **PERSONAL:** | Such envelope was delivered by hand to the offices of the addressee. |

1

| | | |
|---|---|---|
| ☐ | **FACSIMILE:** | Such document was faxed to the facsimile transmission machine with the facsimile machine number stated above. Upon completion of the transmission, the transmitting machine issued a transmission report showing the transmission was complete and without error. |
| ☐ | **E-MAIL:** | Such document was transmitted by electronic mail to the addressees' email addresses as stated above. |
| ☒ XX | **FEDERAL EXPRESS:** | Such correspondence was deposited on the same day in the ordinary course of business with a facility regularly maintained by Federal Express. |
| ☐ | **EXPRESS MAIL:** | Such correspondence was deposited on the same day in the ordinary course of business with a facility regularly maintained by the United States Postal Service. |
| ☐ | **OVERNIGHT DELIVERY:** | Such correspondence was given on the same day in the ordinary course of business to an authorized courier or a driver authorized by that courier to receive documents. |

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

I declare under penalty of perjury that the above is true and correct. Executed on August 26, 2013, at San Diego, California.

_Kristen Coolidge_
Kristen Coolidge

2

# EXHIBIT E

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 12 - 9095 PSG (AGRx) | Date | January 10, 2013 |
|---|---|---|---|
| Title | *Cleo Flauta, et al. v. Johnson & Johnson, et al.* | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge |
|---|---|

| Wendy K. Hernandez | Not Reported | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:** **(In Chambers): Order DISMISSING all Plaintiffs except for the first named Plaintiff for improper joinder**

Before the Court is Plaintiffs' Response to the Court's Order to Show Cause ("OSC") why the case should not be dismissed for improper joinder of parties. *See* Dkts. # 21, 23. After considering Plaintiffs' Response, the Court finds that Plaintiffs have not established that joinder is proper and so dismisses all Plaintiffs, except the first named Plaintiff, from the action.

I.      Background

In this case, over 940 named Plaintiffs from 43 states filed an action against Defendants Johnson & Johnson, Janssen Pharmaceutical, Inc., and Janssen Research & Development, LLC (collectively, "Defendants") alleging claims for injuries that Plaintiffs say they suffered after ingesting the drug Levaquin, which Defendants manufactured and sold. *See Compl.*

Levaquin is a drug used to treat various infections. *Id. ¶* 3. Plaintiffs allege that Levaquin has a propensity to cause tendon ruptures and other tendon injuries, especially in people over 60. *Id.* ¶¶ 4-5. Plaintiffs contend that Levaquin is unreasonably dangerous because it was distributed without adequate warnings regarding its propensity to cause tendon injuries. *Id.* ¶ 111. All Plaintiffs allege that they took Levanquin and suffered severe and debilitating tendon injuries as a result. *Id.* ¶¶ 12-54. Plaintiffs assert causes of action for (1) strict product liability for manufacturing defect and/or design defect; (2) strict product liability for failure to warn; (3) negligence; (4) breach of implied and express warranties for the design, manufacture, production, testing, study, inspection, labeling, marketing, advertising, sales, promotion, and distribution of Levaquin; (5) common law fraud; and (6) violation of consumer protection laws.

EXHIBIT E, PAGE 126

<center>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

</center>

| Case No. | CV 12 - 9095 PSG (AGRx) | Date | January 10, 2013 |
|---|---|---|---|
| Title | *Cleo Flauta, et al. v. Johnson & Johnson, et al.* | | |

On December 12, 2012, the Court issued an order to show cause why the joinder of over 940 Plaintiffs was proper. In its order, the Court noted that the Complaint did not contain class allegations or a statement that Plaintiffs were properly joined, and that it did not appear that Plaintiffs asserted a right to relief "arising out of the same transaction or occurrence," as required by federal and California rules of civil procedure. *See* Dkt. # 21. On January 4, 2013, Plaintiffs filed a timely response to the Court's OSC. *See* Dkt. # 23. In their Response, Plaintiffs assert that joinder is proper because each Plaintiff ingested Levaquin and suffered tendon injuries as a result. *Resp.* 3:13-17. Plaintiffs contend that the claims are based on the same transaction or occurrence because they are all based on the development, manufacture, promotion, marketing, and sale of Levaquin by Defendants. *Id.* 3:20-23.

II.    Discussion

A.    Propriety of Joinder

Federal and state rules of civil procedure provide substantially identical rules for joinder. Federal Rule of Civil Procedure 20(a) provides the following:

"Persons may join in one action as plaintiffs if:

(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

(B) any question of law or fact common to all plaintiffs will arise in the action."

Fed. R. Civ. P. 20(a).

Similarly, California Code of Civil Procedure § 378 provides the following:

"(a) All persons may join in one action as plaintiffs if:

(1) They assert any right to relief jointly, severally, or in the alternative, in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any

<center>EXHIBIT E, PAGE 127</center>

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 12 - 9095 PSG (AGRx) | Date | January 10, 2013 |
|----------|--------------------------|------|------------------|
| Title | *Cleo Flauta, et al. v. Johnson & Johnson, et al.* | | |

> question of law or fact common to all these persons will arise
> in the action; or
>
> (2) They have a claim, right, or interest adverse to the
> defendant in the property or controversy which is the subject
> of the action.

Cal. Civ. Proc. Code § 378. Therefore, the Court must determine whether Plaintiffs' claims arise from the same transaction or occurrence, meaning that the plaintiffs' claims share a similar factual background. *See Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997).

Several district courts around the country have addressed joinder in the context of drug liability cases similar to the present case, where plaintiffs have sought joinder based on shared use of a medication or medical device. While there appears to be some disagreement regarding whether joinder is permissible under these circumstances, the majority of courts to address the issue have found joinder inappropriate when based only on allegations that all plaintiffs ingested the same drug or used the same medical device manufactured by the defendants and suffered similar injuries. *See, e.g., Hyatt v. Organon USA, Inc.*, No 12-1248-RWS, 2012 WL 4809163, at *1 (E.D. Mo. Oct. 10, 2012) (finding joinder under Rule 20(a) improper based on allegations that all plaintiffs had used the same birth control product and suffered resulting injuries); *Boschert v. Pfizer, Inc.*, No. 08-1714, 2009 WL 1383183, at *3 (E.D. Mo. May 14, 2009) (rejecting joinder of four plaintiffs who took the same drug and suffered mental and behavioral side effects but were prescribed the drugs at different times, for different durations, and had different medical histories); *Cumba v. Merck & Co.*, No. 08-CV-2328 (DMC), 2009 WL 1351462, at *1 (D.N.J. May 12, 2009) (concluding that allegations that the plaintiffs had ingested the same drug and sustained the same injury were insufficient to satisfy the Rule 20(a) joinder requirements); *In re Prempro Prods. Liab. Litig.*, 417 F. Supp. 2d 1058, 1060 (E.D. Ark. 2006) (finding joinder improper when the only commonality among plaintiffs was that they all took a particular type of drug); *McNaughton v. Merck & Co.*, No. 04-8297 (LAP), 2004 WL 5180726, *3 (S.D.N.Y. Dec. 17, 2004) (denying joinder under Rule 20(a) when the only similarity between 65 plaintiffs was that they allegedly suffered injury as a result of ingesting drugs manufactured by the defendant); *In re Baycol Prods. Liab. Litig.*, MDL No. 1431, 2002 WL 32155269, at *2 (D. Minn. July 5, 2002) (finding, in a drug liability case, that the "fact that defendants' conduct is common to all of plaintiffs' claims and that the legal issues of duty, breach of duty and proximate cause and resulting harm are common do not satisfy Rule 20's requirements"); *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 146 (S.D.N.Y. 2001) (finding joinder improper when plaintiffs alleged defects, the precise details of which were unknown, and which may have caused different results and different injuries in patients,

EXHIBIT E, PAGE 128

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12 - 9095 PSG (AGRx) | Date | January 10, 2013 |
|---|---|---|---|
| Title | *Cleo Flauta, et al. v. Johnson & Johnson, et al.* | | |

depending on such variables as exposure to the drug, the patients physical state at the time of taking the drug, and "a host of other known and unknown factors that must be considered at trial with respect to each individual plaintiff"); *Graziose v. Am. Home Prods. Corp.*, 202 F.R.D. 638, 640-41 (D. Nev. 2001) (finding joinder under Rule 20(a) improper when "[t]he only concrete similarity among the various Plaintiffs are that they (or their spouse) took a medicine containing PPA as an active ingredient, and they allegedly suffered an injury"); *In re Diet Drugs*, No. 98-20478, 1203, 1999 WL 554584, at *4 (E.D. Pa. July 16, 1999) (finding that the Rule 20(a) joinder requirements were not met when plaintiffs had purchased diet drugs from defendants but had received the drugs from different sources, such as different physicians, hospitals, or diet centers); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, No. MDL 1014, 1995 WL 428683, at *6 (E.D. Pa. July 17, 1995) ("[T]he fact that claimants have the same or similar device of a defendant manufacturer implanted in or about their spine is, likewise not a proper joinder under Federal Rule of Civil Procedure 20."). *But see Jamison v. Purdue Pharm. Co.*, 251 F. Supp. 2d 1315, 1322-23 (S.D. Miss. 2003) (permitting joinder of five plaintiffs who all alleged injury as a result of a defectively designed product that was promoted by the defendants); *In re Norplant Contraceptive Prods. Liab. Litig.*, 168 F.R.D. 579, 580-81 (E.D. Tex. 1996) (granting joinder based on allegations that plaintiffs all suffered injury after ingesting the defendants' drug and that defendants had "failed in their nationwide promotional materials to adequately warn Plaintiffs of the risks and severity of side effects associated with the use of [the drug]").

The Court is persuaded by the weight of authority finding joinder improper when based solely on the commonality that all plaintiffs ingested the same drug manufactured by the defendant and suffered similar injuries as a result. The purposes of joinder under Rule 20(a) are "to promote judicial economy, and reduce inconvenience, delay, and added expense" by permitting plaintiffs to join claims that are substantially based on the same basic set of facts. *Coughlin*, 130 F.3d at 1351; *see also League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1977) ("The primary purpose is to promote trial convenience and to prevent multiple lawsuits."). The purposes of Rule 20(a) are not served when the claims are similar in nature or share some commonalities but are predicated on distinct factual scenarios. In such a case, the joinder of multiple parties decreases judicial economy and efficiency, rather than promoting it, because it requires the court to view each claim in "a separate and individual light." *Coughlin*, 130 F.3d at 1351 (severing claims of 49 individual plaintiffs that were similar but based on distinct factual scenarios).

The reasoning in *Coughlin* applies *a fortiori* to the present case, as, here, Plaintiffs seek to join the claims of over 940 individuals across the country, whose only shared experience is the ingestion of Levaquin. *See Compl.* Plaintiffs do not allege any commonality among them other than that they all ingested the drug and suffered tendon injuries. It appears from the face of the

EXHIBIT E, PAGE 129

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 12 - 9095 PSG (AGRx) | Date | January 10, 2013 |
|---|---|---|---|
| Title | *Cleo Flauta, et al. v. Johnson & Johnson, et al.* | | |

Complaint that Plaintiffs may have suffered different kinds of tendon injuries, as the Complaint alleges that Levaquin had a propensity to cause tendon rupture and other injuries involving the degradation of tendon tissue. *Compl.* ¶¶ 4-5. Further, other than characterizing the injuries as "severe and debilitating," Plaintiffs do not provide any information about the specifics of the injuries suffered by any of the Plaintiffs. Plaintiffs similarly provide no information about each Plaintiff's medical history and use of Levaquin, such as the reason each Plaintiff was prescribed Levaquin and each Plaintiff's dosage and length of exposure to the drug. In a group this large, the Court can only conclude that Plaintiffs had different medical histories and experiences with the drug, especially given that the drug was prescribed by different physicians to patients in 43 different states at different times. As a result, there are myriad known and unknown factors that the Court will inevitably have to consider in evaluating each Plaintiff's injuries. Because Plaintiffs received the drug from different physicians in different states at different times and, presumably, for different purposes with different dosages and lengths of exposure, the Court cannot say that the claims arise out of the same transaction or occurrence or that judicial economy would be served by trying the claims together. Thus, the Court joins the majority of district courts in the country that have addressed the issue and finds that joinder based solely on Plaintiffs' ingestion of the same drug manufactured by Defendant is improper. *See Cumba*, 2009 WL 1351462, at *1 ("The majority of courts to address joinder in the context of drug liability cases have found that basing joinder merely on the fact that the plaintiffs ingested the same drug and sustained injuries as a result thereof is insufficient to satisfy Rule 20(a)'s 'same transaction' requirement."); *McNaughton*, 2004 WL 5180726, at *2 ("In particular, drug liability cases have held that related factual or legal issues, such as similar injury allegedly caused by the same drug, are insufficient for Rule 20 joinder purposes.").

       B.    <u>Remedy for Improper Joinder</u>

      Pursuant to Federal Rule of Civil Procedure 21, "misjoinder of parties is not a ground for dismissing an action," but the court may add or drop an improperly joined party. Fed. R. Civ. P. 21. In cases such as this one, courts dismiss without prejudice all but the first named Plaintiff and all Defendants against whom the first named Plaintiff does not personally assert a cause of action. *See Coughlin*, 130 F.3d at 1351 (upholding the district court's decision to dismiss without prejudice all plaintiffs other than the first named plaintiff). Therefore, the Court finds it appropriate in this case to dismiss all Plaintiffs except the first named Plaintiff, Cleo Flauta ("Flauta"). Because Flauta personally asserts a cause of action against all Defendants, none of the Defendants are dismissed.

III.    <u>Conclusion</u>

EXHIBIT E, PAGE 130

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 12 - 9095 PSG (AGRx) | Date | January 10, 2013 |
|---|---|---|---|
| Title | *Cleo Flauta, et al. v. Johnson & Johnson, et al.* | | |

For the foregoing reasons, the Court DISMISSES without prejudice all named Plaintiffs except Flauta. The other named Plaintiffs may file separate actions if they so choose.

**IT IS SO ORDERED.**

EXHIBIT E, PAGE 131